UNITED STATES of America, Plaintiff,

v.

ONE 1982 PORSCHE 928, THREE-DOOR, LICENSE PLATE 1986/NJ TEMP./534807 (AUTOMOBILE), Defendant-in-rem.

No. 87 Civ. 4671 (WCC).

United States District Court, S.D. New York.

March 14, 1990.

As Amended March 15, 1990.

⟜5

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City, for plaintiff; Nancy G. Milburn, Asst. U.S. Atty., of counsel.

Jorge Guttlein, Aranda & Guttlein, New York City, for defendant-in-rem; Mitchell Stein, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

This *in rem* civil action, tried without a jury on March 8, 1990, concerns forfeiture of a 1982 Porsche 928, Three Door, License Plate 1986/NJ Temp/534807 (the "Porsche") pursuant to 21 U.S.C. Section 881 (1988). Federal jurisdiction is predicated upon 28 U.S.C. §§ 1345 and 1355.

After hearing the government's case in chief, the Court orally ruled that, as a matter of law, the government had established a prima facie case of probable cause.

After hearing claimants' testimony and the government's rebuttal witness, this Court concludes that claimants lack standing to contest the forfeiture. This opinion incorporates the Court's findings of fact and conclusions of law pursuant to Rule 52(a), Fed.R.Civ.P.

## FINDINGS OF FACT

This civil forfeiture action arises out of an investigation of the narcotics trafficking operation of Domingo Taveras, Jr. ("Domingo Jr.") and Luis and Ramon Gomez (the "Gomez brothers"). The government's affirmative case was offered through Drug Enforcement Administration ("DEA") Special Agent James Hunt who testified in substance as follows:

On September 2, 1986, DEA special agents lawfully arrested Domingo Jr. and Ramon Gomez as they were leaving an apartment building at 302 West 76th Street, New York City. Domingo Jr. was charged with two counts of criminal possession of cocaine in the first degree. It is not disputed that there was probable cause for the arrest.

At the time of his arrest, Domingo Jr. had in his possession keys to apartment 5B at 302 West 76th Street, which was leased in his name, and keys to safes located within the apartment. Immediately subsequent to the arrest, DEA special agents lawfully searched apartment 5B pursuant to a special narcotics search warrant and, *inter alia*, lawfully seized from the apartment safes $5,550 in U.S. currency and approximately five pounds of cocaine. Also seized from the apartment were firearms, loaded magazines, and equipment for processing cocaine.

Prior to the seizure, the DEA special agents had learned from a confidential informant that Domingo Jr. owned and drove a blue Porsche. Following Domingo Jr.'s arrest and the reading of his rights, Special Agent Hunt asked Domingo Jr. the location of this car and those the Gomez brothers had been seen driving. Domingo Jr. told Special Agent Hunt that the cars were at E & B Operating, Inc., a parking garage lo-

cated at 137–43 West 108th Street, New York City.

Domingo Jr. also told Special Agent Hunt that the Porsche was his and that he had purchased it from M & P Foreign Cars in Lodi, New Jersey for approximately $20,000 cash with money he made through the narcotics trafficking operation that he and the Gomez brothers ran. Domingo Jr. then offered to cooperate with the DEA special agents in developing cases against other drug dealers, but his assistance was refused.

That same day, DEA special agents seized the Porsche from the garage. In addition to the Porsche, DEA special agents also seized from the garage a 1983 white Porsche, a 1981 Mercedes–Benz, and a 1982 Toyota Celica, all registered to Marino Gomez, the Gomez brothers' father.

Following his arrest, Domingo Jr. pled guilty in New York State Criminal Court to a charge of possessing cocaine with intent to sell, a Class B felony. Special Agent Hunt stated that Domingo Jr. telephoned him many months later to repeat his offer of assistance and to request the return of his car to avoid suspicion and preserve his image as a drug dealer. The special agent later discovered that Domingo Jr. was calling from prison.

Special Agent Hunt testified that in his experience with the DEA, he has seized approximately one hundred cars. He testified that registering cars in the name of another person is a common tactic used by drug traffickers to mask their actual ownership and avoid forfeiture in the event of an arrest.

The claimants in this case, Flora ("Flora") and Domingo Taveras, Sr. ("Domingo Sr."), the parents of Domingo Jr., testified through an interpreter that they were the owners of the Porsche, which they purchased for export to and resale in the Dominican Republic upon Domingo Sr.'s impending retirement. Domingo Sr. further testified that he purchased the Porsche in August 1986 from M & P Foreign Cars in Lodi, New Jersey for an amount in excess of $20,000 cash. Domingo Jr., who is fluent in English, negotiated the purchase

and arranged for the issuance of a temporary registration. Domingo Jr. drove the vehicle from the car dealer to the E & B Operating, Inc. garage in Manhattan.

The certificate of title for the Porsche was issued in claimants' names. Neither Flora nor Domingo Sr. has ever had a driver's license or owned an automobile, other than the instant Porsche. Neither Flora nor Domingo Sr. ever drove the Porsche. Domingo Jr. was the only family member who ever drove the vehicle. Domingo Jr. paid for repainting the vehicle, although Domingo Sr. claimed to have contributed part of the money, the amount of which he could not recall. Neither Flora nor Domingo Sr. presented at trial any of the receipts, bills of sale, registration forms or insurance papers relating to the vehicle. Flora never rode in the Porsche, was not present at its purchase, did not know where it was kept or whether it was insured, and only saw it once when Domingo Jr. had parked it outside her apartment window. Domingo Sr. had been a passenger in the vehicle only on the trip back from the car dealer.

Claimants' joint income tax returns from 1982 to 1986 reveal that claimants could not have afforded to purchase the vehicle from earnings. The $20,000 plus purchase price of the 1982 Porsche exceeds the total combined annual income of Flora and Domingo Sr. for each of the four years preceding their alleged purchase of the vehicle. Since 1982, Domingo Sr. has had an active savings account at the American Savings Bank with a January 1986 balance of $4,896.55. Between January and September 1986, he made fourteen deposits totalling $6,376.44 and three withdrawals, totalling $4,500.00. As of 1983, Domingo Sr. also had bank accounts at the American Savings Bank and the Manufacturer's Hanover Trust Company. As of 1986, Flora had savings accounts at Citibank and at the American Savings Bank.

Claimants contend that the approximately $20,000 purchase price for the Porsche was comprised of 1) approximately $9,000 derived from the sale of property in the Dominican Republic which Flora inherited

from her father; 2) approximately $8,000 borrowed from Carlos Medina, claimants' nephew; and 3) approximately $5,000 borrowed from or given by Domingo Jr. None of these funds apparently passed through any of claimants' bank accounts. The circumstances of these transactions, as related by claimants and by Domingo Jr., who was called as the government's rebuttal witness, are as follows:

### The Inheritance

Flora sold the inherited real property in the Dominican Republic to Diomedes Medina, her nephew and Carlos' brother, for 18,000 Dominican pesos. Flora offered no documentation of the transaction or the inheritance. The currency was converted in the Dominican Republic to U.S. dollars equalling approximately $9,000 which was brought in cash to the United States. Flora offered no evidence of the currency conversion. Flora hid the cash in her sewing box at home rather than placing the funds in her existing bank accounts, for ready access upon her husband's retirement. Domingo Sr. did not know where the money was kept.

### The Medina Loan

Carlos Medina, claimants' nephew, loaned claimants $8,000 in gratitude for claimants' allowing him to reside in their home while he attended college prior to 1984. Claimants offered no documentation of the loan or evidence concerning repayment, interest rates or maturity dates. Medina did not testify at trial, nor did counsel offer his deposition testimony, although his deposition had been taken in this action.

### The Domingo Jr. Transfer

Domingo Jr. gave $5,000 to his parents for the purchase and resale of the Porsche. The evidence did not make clear whether the transfer was a gift or a loan but the funds were not reported on claimants' income tax return, no documentation was offered, and there was no testimony respecting the terms of repayment. Domingo Jr. testified that the money constituted insurance proceeds and savings. In 1983 and 1984 he worked seasonally as a lifeguard. According to his tax returns, he earned gross income of $4,714.70 in 1983 and $3,714.12 in 1984. In 1985, Domingo Jr. attended the Police Academy, reporting a total income of $17,789 on his federal income tax return, consisting of $14,810 in wages, $459 in interest and pension payments and $2,520 in unemployment compensation.

In February 1985, Domingo Jr. purchased a 1984 Dodge Conquest for which he made a substantial down payment, the amount of which he does not recall, and monthly payments of around $200 until July 1985 when the car was stolen. He then received from an unnamed insurance company approximately $5,000 or $6,000, for which he offered no documentation. On August 9, 1985, Domingo Jr. obtained a $5,000 loan from the American Savings Bank. Domingo Jr. thereafter purchased a Mercedes–Benz 190 E from Coach Auto Leasing, again making a substantial down payment. When the Mercedes was stolen in November 1985, he again received insurance proceeds of $5,498.75 which he deposited in his account at Citibank. Bank statements presented by the government demonstrate that the bulk of this $5,000 deposit was not withdrawn although $2,200 was withdrawn on January 3, 1986, $2,000 of which was transferred to his checking account. Domingo Jr. also withdrew $5,600 from his American Savings Bank on August 19, 1986 and repaid his loan on August 20, 1986.

From September 1985 until his arrest on September 2, 1986, Domingo Jr. was not employed in any capacity. His sole source of legitimate income was unemployment benefits. He did not file a 1986 income tax return.

Flora supported her claim that she intended to resell the car by testifying that her sister had told her that this would be a good investment because someone in the Dominican Republic had offered her a lot of money for an Audi that she had brought with her from the United States. Domingo Sr. similarly testified that his brothers had told him that buying a luxury car and exporting it to the Dominican Republic would be a good investment. Although these lat-

ter communications were claimed to be in writing, the letters were not produced. Flora and Domingo Sr. had never advertised or offered the car for sale in the Dominican Republic and had made no inquiries about or arrangements for transporting the car from the United States. Although they assertedly purchased the car for export upon Domingo Sr.'s retirement, there was no evidence of preparations to move; Domingo Sr. has still not quit his job and no airline reservations were made nor tickets purchased. Flora, Domingo Sr. and Domingo Jr. knew no person who had ever purchased a car in the United States for resale in the Dominican Republic.

## CONCLUSIONS OF LAW AND ULTIMATE FINDINGS OF FACT

### Standing

A forfeiture proceeding is an in rem action brought against seized property pursuant to the legal fiction that the property itself is guilty of facilitating the crime. *See Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 680–84, 94 S.Ct. 2080, 2090–92, 40 L.Ed.2d 452 (1974). To contest a forfeiture action, an individual must first demonstrate an interest in the seized property sufficient to satisfy the court of his standing as a claimant. *See United States v. Three Hundred Sixty Four Thousand Nine Hundred Sixty Dollars in U.S. Currency*, 661 F.2d 319, 326 (5th Cir.1981). Such standing is a threshold issue and, if the claimant lacks standing, the court lacks jurisdiction to consider his challenge of the forfeiture. *See Mercado v. United States Customs Service, et al.*, 873 F.2d 641, 644 (2d Cir.1989); *United States v. Five Hundred Thousand Dollars*, 730 F.2d 1437, 1439 (11th Cir.1984). The burden of proof to establish sufficient standing in forfeiture actions rests with the claimant. *See Mercado*, 873 F.2d at 644.

█ To establish standing in a civil forfeiture action, the claimant must demonstrate a possessory or ownership interest in the subject property. *See United States v. Five Hundred Thousand Dollars*, 730 F.2d at 1439; *United States v. One 1945 Doug-las C–54 (DC–4) Aircraft*, (Appeal 1), 604 F.2d 27, 28 (8th Cir.1979). While ownership may be proven by actual possession, dominion, control, title and financial stake, "[t]he possession of bare legal title to the res may be insufficient," absent other evidence of control or dominion over the property. *United States v. One 1945 Douglas*, (Appeal 1), 604 F.2d at 28–29; *United States v. One 1945 Douglas*, (Appeal 2), 647 F.2d 864, 866 (8th Cir.1981); *United States v. One 1977 36 Foot Cigarette Ocean Racer*, 624 F.Supp. 290, 294–95 (S.D.Fla.1985); *United States v. One 1980 Chevrolet Blazer Automobile*, 572 F.Supp. 994, 996–97 (E.D.N.Y.1983); *United States v. One 1981 Datsun 280 ZX*, 563 F.Supp. 470, 474 (E.D.Pa.1983).

The rationale for the rule that bare legal title may be insufficient is that appearances may be manipulated and deceptive, especially in the world of drug trafficking and other illegal operations. It has been recognized that people engaged in illegal activities, especially when needing to conceal illegitimate funds and being aware of forfeiture statutes, often attempt to disguise their interests in property by not placing title in their own names. *See United States v. One 1977 36 Foot Cigarette Ocean Racer*, 624 F.Supp. at 294–95. A search for standing in civil forfeiture cases looks beyond the formal title to determine whether the record owner is the "real" owner or merely a "strawman" set up either to conceal illegal dealings or to avoid forfeiture.

In *United States v. $280,505 Dollars*, 655 F.Supp. 1487, 1495 (S.D.Fla.1986), it was held that the claimant, named on the certificate of title with her son, lacked standing to challenge the forfeiture of a vehicle because she had no possession or control of the car and could not sufficiently document the source of the money used to purchase the car. The district court found implausible claimant's testimony that she kept the money in a home safe even though she had a bank account. The court, further noting that it was the son who had paid the money to the car dealer and used the car, found claimant to be a "straw" or

"nominal" owner of the vehicle who thus had no standing to contest its forfeiture.

In *United States v. One 1981 Datsun,* 563 F.Supp. 470 (E.D.Pa.1983), it was held that claimant lacked standing because despite the fact that he had title to the vehicle, he neither paid for nor exercised dominion and control over the vehicle. And in *United States v. One 1980 Chevrolet Blazer,* 572 F.Supp. 994 (E.D.N.Y.1983), the court denied standing to claimant who introduced no evidence of ownership other than her name typed on the back of the certificate of title but claimed she had obtained a $10,000 loan from her late grandfather-in-law. The court found important the "utter absence of any documentation supporting [claimant's] story about the loan." *Id.* at 997.

■ These decisions are closely apposite to the case at bar. Claimants here have likewise failed to demonstrate, by a preponderance of the evidence, an interest in the seized property sufficient to satisfy the Court that they have standing. On the evidence presented at trial, the Court finds that claimants were merely "nominal" owners of the Porsche and held neither a possessory nor controlling interest in the vehicle. The Court further finds that their testimony concerning how they obtained the money for the purchase price is unworthy of belief. Claimants exercised no dominion or control over the car whatsoever, and showed little or no interest in what would have been for them an investment of considerable magnitude. Flora testified that she had seen the car only once and never rode in it. Domingo Sr. testified that he had ridden in the vehicle only once. Domingo Sr.'s testimony that he gave money to Domingo Jr. to cover part of the cost of painting the car was not convincing, particularly in view of the fact that there was no documentary record, and Domingo Sr. could not remember the amount advanced.

As to the Dominican Republic inheritance and property sale, there is a complete absence of documentation. There is no evidence of the property's existence, of its bequest to Flora or of its sale to her neph-

ew. Claimants' assertion that the funds were hidden in their home despite their existing active bank accounts is not credible. As for the Medina loan and the Domingo Jr. transfer, there is similarly not a shred of documentary corroboration. The Court finds that Domingo Jr.'s testimony that he obtained the money from insurance proceeds and savings is not believable in view of all the other evidence, including his earnings history and bank statements. The Court concludes that claimants have no financial stake in the Porsche sufficient to confer standing to challenge its forfeiture.

*Probable Cause*

■ If a claimant establishes standing, then it is the government's burden to show probable cause that the subject property was involved in unlawful activity of the type defined by the statute under which the suit is brought. The Court finds now, as it did after hearing the government's case in chief, that probable cause had been established because DEA special agents acted upon Domingo Jr.'s post-arrest statements that the Porsche belonged to him and that he had bought it with drug proceeds, as well as information from a confidential informant that Domingo Jr. owned and drove a blue Porsche, hearsay admissible in a forfeiture proceeding, *see United States v. One 56 Foot Yacht Named the Tahuna,* 702 F.2d 1276, 1283–84 (9th Cir. 1983).

Once the government shows probable cause, the burden of proof shifts to the claimant to establish, by a preponderance of the evidence, that the seized property does not constitute proceeds traceable to exchanges of controlled substances. *See United States v. Banco Cafetero,* 797 F.2d 1154, 1160–61 (2nd Cir.1986); *United States v. $131,602 in U.S. Currency,* 563 F.Supp. 921, 923 (S.D.N.Y.1982). Even if claimants had established standing, they have not met this burden. Claimants' testimony, as discussed above, is not believable. In the words of the Sixth Circuit Court, "[A] remote possibility does not vitiate a strong probability, and neither will it create a preponderance of evidence against a far

more reasonable conclusion." *United States v. $83,320 in United States Currency*, 682 F.2d 573, 577–78 (6th Cir.1982).

## CONCLUSION

For the reasons stated above, judgment will be entered for plaintiff and the Porsche will be declared forfeit pursuant to 21 U.S.C. § 881 (1988).

SO ORDERED.