**UNITED STATES of America**

v.

**ALL FUNDS ON DEPOSIT IN ANY ACCOUNTS MAINTAINED AT MERRILL LYNCH, PIERCE, FENNER & SMITH, et al., Defendants.**

No. CV 90–2510.

United States District Court, E.D. New York.

Aug. 5, 1992.

Andrew Maloney, U.S. Atty. by Jennifer Boal, Gary Brown and Arthur Hui, Brooklyn, N.Y., for U.S.

Isidoro Rodriguez, Barranquilla, Colombia, for Abuchaibe Hnos., Comercial Estrella Ltda, Confecciones Y Tejidos Nacionales Ltda, Creaciones Viviana Ltda, Industrias Marathon Ltda, Manufacturas Internacionales Ltda, Manufacturas J.D. Ltda, Manufacturera Del Atlantico Ltda and Organizacion J.D. Ltda.

Blair Sibley, Davis, Markel & Edwards, Miami, Fla., for Confecciones Elizabeth Ltda, Confecciones Zuny Ltda, Creaciones Ivonne Ltda, Creaciones Karen Ltda, Incolco Ltda, Manufacturas De Modas Ltda, Tote Export Manufacturas Ltda and Valery Fashions Ltda.

Michael Abbell, Ristau & Abbell, Washington, D.C., for Siracusa Trading Co. Heirs of Heriberto Castro–Mesa.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge:

This case reveals the sophisticated financial operations of an international criminal syndicate. It involves more than ten million dollars in wire transfers and deposited funds seized by the government as the traceable proceeds of illegal money-laundering and narcotics transactions. The moneys were alleged by the government to be subject to forfeiture under 21 U.S.C. § 881 *et seq.* (1988 & Supp. III 1991), and 18 U.S.C. § 981 *et seq.* (1988 & Supp. III 1991). Claimants had the burden at trial of proving either that each amount was not traceable to drug sales or that the claimants were unaware of the taint. After a two-month trial, the jury found that eighteen of the twenty-two amounts seized were forfeitable. For three amounts claimed by two claimants the jury determined that the funds were not the traceable proceeds of illegal money-laundering and narcotics transactions, and for one amount the jury found that the claimant was an innocent owner.

Claimants who received an adverse jury decision move for judgment notwithstanding the verdict or for a new trial; those motions are denied. Their motions to stay execution of the judgment during the appeal without posting a supersedeas bond are granted. Claimants supported by the jury verdict move to release the res; that motion is granted. The government moves to stay payment of proceeds to two claimants on the ground that they are represented by a fugitive; that motion—perhaps the most interesting in the case—is denied.

## I. FACTS

Most of the funds seized and forfeited are the proceeds of a well-organized multinational organization based in the city of Cali, Colombia and led by a fugitive named José Santa Cruz Londono. Londono and others conducted extensive narcotics trafficking and money-laundering activities involving hundreds of millions of dollars and thousands of kilograms of cocaine smuggled into the United States.

The Londono organization utilized many sophisticated strategies to launder narcotics proceeds. Electronic funds transfers from companies nominally in the clothing

manufacturing or import-export business moved currency internationally; cars filled with cocaine were driven from Florida to New York, where the drugs were exchanged for cash and driven back to Florida (with the money at times smelling so strongly of drugs and drug-processing ingredients that it had to be literally washed before it could be counted); shell corporations in Panama and Colombia electronically transferred money to Europe and elsewhere; huge amounts of cash were flown by plane to Panama, unloaded, and deposited in banks accustomed to such practices; drug dollars were exchanged on the black market in Colombia for Colombian pesos; shipments of manufactured goods from Colombia to Panama were "lost" to cover up dollar transfers; "loans" were made and paid the same day; and many other procedures were used to disguise the true source and nature of the funds.

Extensive corporate and banking records from all over the world were the primary basis for the government's case. Claimants used corporate records, letters rogatory, testimony of those with knowledge of claimants' activities, and still and video pictures purporting to show the operations of their manufacturing plants in Colombia.

The Chief of the Drug Enforcement Administration Financial Intelligence Group, Cheryl Holmes, testified at trial after reviewing the voluminous bank and corporate records seized. She traced the links between numerous Panamanian shell corporations, which sent and received electronic funds transfers, and the Londono enterprise. Certified Public Accountant Aram Kostoglian, another government witness, testified that the cash receipts, corporate records, and bank statements of the claimant corporations were inconsistent with the types of records held by legitimate companies in Colombia and elsewhere. Several former Londono associates who had pled guilty also testified at trial to the illegal nature of the various enterprises utilized by claimants; one, who dealt in gold as a cover-up, described the counting and repackaging of huge stacks of United States currency.

In connection with the money-laundering scheme, substantial sums of money were electronically transferred into and out of bank accounts in many countries including the United States. *See generally Manufacturas International Ltda v. Manufacturers Hanover Trust Co., et al. (Consolidated Bank Cases)*, 792 F.Supp. 180 (E.D.N.Y.1992) (describing the wire transfers). Officials of several European countries began cooperating in 1989 investigating the suspected drug-money-laundering activities of José Santa Cruz Londono. The inquiry began in Luxembourg and culminated in the seizure of funds in New York and abroad during the summer of 1990.

In September 1989, using a wiretap the Luxembourg Sûreté Publique intercepted a telephone call between Londono in Colombia and José Franklin Jurado–Rodriguez, a Londono associate, in Luxembourg. Jurado reported to Londono that he had successfully opened bank accounts using the name of Londono's father-in-law, and that he planned to set up several shell companies to assist in the money-laundering enterprises. The Sûreté learned through wiretaps and faxtaps that another Londono associate, Edgar Alberto Garcia–Montilla, was opening bank accounts throughout Europe in the names of Londono's parents-in-law, Heriberto Castro–Mesa and Esperanza Rodriguez de Castro.

In June 1990, Jurado, Garcia, and a third associate, Ricardo Mahecha–Bustos, were observed by European law enforcement officers during a ten-day period traveling and depositing large sums of money in accounts in Italy, Luxembourg, Belgium, Denmark, Sweden, Germany, and the Netherlands. They were arrested when they returned to Luxembourg. Jurado and Garcia were later convicted in Luxembourg on money-laundering charges after a lengthy trial.

Heavy wire transfer activity followed the three arrests. Using memoranda and bank records seized at the time of the arrests, officials from several countries were able to identify bank accounts around the world connected to the complex drug money-laundering scheme. In July and August 1990 approximately thirty million dollars was

seized in Europe and sixteen million dollars was seized in Panama. In the United States, several American banks having correspondent banking relationships with Panamanian and Colombian banks were instructed by the United States Attorney to seize certain funds on deposit and wire transfers. The seized funds, totaling over ten million dollars, were the subject of this *All Funds* action.

Pursuant to a succession of amended complaints and supplemental warrants the banks were ordered by the United States Attorney to attach the identified accounts and wire transfers and pay the money into court pending the outcome of a plenary trial. In a separate action by claimants against the banks which seized the funds, summary judgment was granted for the defendant banks. *See Manufacturas International Ltda v. Manufacturers Hanover Trust Bank, et al. (Consolidated Bank Cases)*, 792 F.Supp. 180 (E.D.N.Y.1992). Another related action, by claimants against the United States Attorneys who ordered the banks to seize the funds, was dismissed for failure to state a claim. *Abuchaibe Hnos. v. Maltz et al.*, CV 92–528 (oral decision).

Testimony at trial revealed an officially sanctioned parallel unofficial street market in dollars in Colombia. There was testimony that it is common knowledge in the streets and board rooms of Colombia that the source of the millions of American dollars in circulation in this "black" market is largely the drug trade in New York and other American cities.

## II. LAW

As the "drug war" has escalated, the number of forfeiture cases in the United States has burgeoned. Taking away the profits of drug crimes through forfeiture is a powerful weapon to cripple drug-trading enterprises. Unfairly wielded it can place commercial enterprises at a terrible disadvantage. It skirts the edge of due process. *See, e.g., United States v. $8,850 in United States Currency*, 461 U.S. 555, 565–66, 103 S.Ct. 2005, 2012–13, 76 L.Ed.2d 143 (1983) (balancing test set out in speedy trial context in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972), applies to determine reasonableness of delay in forfeiture proceedings). Even when a claimant is successful in fending off ultimate forfeiture, the loss of use of the seized funds for months or years while the case drags on can cripple a business. *See id.* at 565, 103 S.Ct. at 2005 ("Being deprived of this substantial sum of money for a year and a half is undoubtedly a significant burden."). The substantive law, procedures, and allocation of burdens of proof in forfeiture cases differ markedly from other civil proceedings, and give the United States prosecutor a substantial edge. *See generally* Edward M. Genson & Marc W. Martin, *A Guide to Handling Federal Narcotics Forfeiture Cases*, 79 Ill.B.J. 180 (1991) (discussing forfeiture procedures).

The government brought these proceedings under 21 U.S.C. § 881(a)(6), which provides for the forfeiture of

[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance ... [and] all proceeds traceable to such an exchange....

The procedures applied in civil forfeiture proceedings are those "law[s] relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws." 21 U.S.C. § 881(d); *United States v. $2,500 in United States Currency*, 689 F.2d 10, 12 (2d Cir.1982), *cert. denied sub nom. Aponte v. United States*, 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984).

Burdens of proof are allocated by 19 U.S.C. § 1615. Under that section, the burden of proof is on the claimant, "[p]rovided that probable cause shall be first shown for the institution of such suit or action, to be judged ... by the court." To begin forfeiture proceedings the government must first demonstrate that there was probable cause to institute the action. It must demonstrate that there are "reasonable grounds" to believe that the property is subject to forfeiture. *United States v. Banco Cafetero Panama*, 797

F.2d 1154, 1160 (2d Cir.1986). "These grounds must rise above the level of mere suspicion but need not amount to ... 'prima facie proof.' " *Id.*

The reasonable grounds standard is less stringent than the preponderance of the evidence standard. *United States v. 303 W 116th Street, N.Y., N.Y.*, 901 F.2d 288, 291 (2d Cir.1990). The government need not link the funds to a particular narcotics transaction, but rather must "connect the property with narcotics activity...." *Banco Cafetero*, 797 F.2d at 1160. In satisfying its burden, the government may demonstrate probable cause that the property itself, apart from the actions of the owner, is connected to narcotics activity. *See id.; see also United States v. One 1978 Chrysler LeBaron*, 531 F.Supp. 32, 34 (E.D.N.Y.1981) (innocence of owner does not by itself prevent forfeiture). This reflects the legal fiction that the object itself is the wrongdoer. *Manufacturas Internacional Ltda v. Manufacturers Hanover Trust Bank, et al. (Consolidated Bank Cases)*, 792 F.Supp. 180 (E.D.N.Y.1992); *United States v. One Mercedes–Benz 380 SEL VIN # WDBCA 33A1BB10331*, 604 F.Supp. 1307, 1312 (S.D.N.Y.1984) ("the vehicle itself is guilty of facilitating crime"), *aff'd*, 762 F.2d 991 (2d Cir.1985).

Probable cause is "judged ... by the court." 19 U.S.C. § 1615; *United States v. Sixteen Cases of Silk Ribbons*, 27 F.Cas. 1099 (D.C.N.Y.1870) (question of whether probable cause shown so as to shift burden to claimants is a question for the court); *Three Thousand One Hundred and Nine Cases of Champagne*, 23 F.Cas. 1168 (D.C.N.Y.1867) (same). Hearsay is admissible to support the finding of probable cause. *United States v. 4492 S. Livonia Road, Livonia, N.Y.*, 889 F.2d 1258, 1267 (2d Cir.1989) (hearsay proper, since holding otherwise would undermine Congress's intentional shifting of the burdens in forfeiture cases). As the Second Circuit has explained:

> In view of the unusual relative burdens of proof in civil forfeiture proceedings, this court, as well as a number of other circuits, has recognized an exception to

the requirements of Rule 56(e) that supporting and opposing affidavits be based upon personal knowledge and admissible evidence, allowing the government to establish probable cause on the basis of hearsay affidavits.

*United States v. 15 Black Ledge Drive, Marlborough, Ct.*, 897 F.2d 97, 101 (2d Cir.1990). Circumstantial evidence may be relied upon to show probable cause. *United States v. $2,500 in United States Currency*, 689 F.2d 10, 16 (2d Cir.1982), *cert. denied sub nom. Aponte v. United States*, 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984).

In the instant case, first a magistrate judge and then a district judge *de novo* determined that the government had probable cause to believe the funds were forfeitable. The district court's hearing on probable cause required three trial days in 1991. Post-hearing motions to reconsider the probable cause issue were denied. *See United States v. All Funds et al.*, 1992 WL 37087 (E.D.N.Y.1992).

Once the government has demonstrated probable cause, "the burden of proof shall lie upon" the claimant. 19 U.S.C. § 1615. Standing is "a threshold issue" for a claimant wishing to contest forfeiture. *United States v. One 1982 Porsche 928, Three–Door, License Plate 1986/NJ Temp/534807*, 732 F.Supp. 447, 451 (S.D.N.Y.1990). If the claimant does not have standing, "the court lacks jurisdiction to consider his challenge of the forfeiture." *Id.* A claimant need not have actual or constructive ownership to have standing; even a possessory interest in the property is sufficient. *United States v. $37,590.00*, 736 F.Supp. 1272, 1276 (S.D.N.Y. 1990).

If a claimant has standing, it bears the burden of proving by a preponderance of the evidence either 1) that the funds did not have their source in illegal drug transactions and money-laundering, or 2) that it did not know or constructively know—through conscious avoidance of positive knowledge—the source and nature of the funds as drug-related (the innocent owner

defense). *United States v. 4492 S. Livonia Road, Livonia, N.Y.*, 889 F.2d 1258, 1267 (2d Cir.1989).

The innocent owner defense is set out in the statute:

> [N]o property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without [his] knowledge....

21 U.S.C. § 881(a)(7). "Owner" is defined as "any person with a recognizable legal or equitable interest in the property seized." *United States v. One Parcel of Real Property*, 831 F.2d 566, 567 (5th Cir.1987) (citing legislative history). Ascertaining knowledge of corporate claimants requires examining the contents of corporate books and records and the actions taken by persons acting as corporate agents.

■■■■ To satisfy its burden of proof the claimant may not simply attack the finding of probable cause. *United States v. 228 Acres of Land and Dwelling Located on White Hill Road in Chester, Vt.*, 916 F.2d 808, 812 (2d Cir.1990), *cert. denied sub nom. Moreno v. United States Drug Enforcement Admin.*, —— U.S. ——, 111 S.Ct. 972, 112 L.Ed.2d 1058 (1991). It has the "ultimate burden of proving that the factual predicates for forfeiture have not been met." *Banco Cafetero*, 797 F.2d at 1160. If the claimant cannot establish that the funds are untainted or that it is an innocent owner, the property is forfeited.

The structure of this kind of case is inherently unfair to claimants which must prove that their money is legitimate after the funds have already been seized by the government. The government needs only to show probable cause to seize. The difficulty in proving in an American court the legitimate origins of particular assets from abroad is pronounced.

Foreign enterprises conducting business in a foreign language utilizing business practices different from those known to American jurors are at a particular disadvantage. Moreover, it is often difficult to prove a negative, as claimants must. (Yet, the jury was able to precisely differentiate those cases warranting forfeiture from those in which money was not subject to forfeiture. The diligence and determination of this American jury to be fair to foreign claimants is striking.)

A claimant that surmounts all hurdles and wins a jury verdict is entitled to receive its money promptly. In the instant case the hearing on whether the government had probable cause to seize the funds was not completed until nine months after the funds were seized. The trial was completed more than a year later. Few businesses can function without access to a substantial portion of their assets for that period of time. The claimants who met their burden at trial of proving the legitimate source of their funds will have their money returned to them without any other compensation except interest earned, less court fees for supervision of the funds. They will have been without the use of their money for the two years since the funds were seized.

## III. APPLICATION OF LAW TO FACTS

### A. MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT

Under Rule 50(b) of the Federal Rules of Civil Procedure a judge may disregard the jury's verdict only

> if the evidence, viewed in the light most favorable to the non-movants without considering credibility or weight, reasonably permits only a conclusion in the movants' favor.

*Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 573 (2d Cir.), *cert. denied*, 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80, *cert. denied sub nom. Louis Sternbach & Co. v. Sirota*, 459 U.S. 908, 103 S.Ct. 213, 74 L.Ed.2d 170 (1982). The court should disregard a jury determination for which "there is no legally sufficient evidentiary basis enabling a reasonable jury to make it." 1991 Adv.Committee Notes to Rule 50(b).

In the course of the two-month trial in the instant case, the jury conscientiously listened to the evidence, took notes, and was extremely careful in the course of its decision-making. The jurors were provided with notebooks with dividers to enable

them to address separately each claimant and each claim in the trial. The fact that the jury decided in favor of the government on some claims and in favor of the claimants in others belies any suggestion that their deliberations were not thorough. The evidence, briefly reviewed below, supported the jury's verdict as to each claimant and each claim.

The following claimants sought the following amounts at trial: CONFECCIONES ZUNY LTDA, $440,000; CREACIONES IVONNE LTDA, $32,000; CREACIONES KAREN LTDA, $756,625; INCOLCO LTDA, $1,000,000; MANUFACTURAS DE MODAS LTDA, $400,000; TOTE EXPORT MANUFACTURAS LTDA, $392,860; VALERY FASHIONS LTDA, $448,418; ABUCHAIBE HNOS., $200,000 and $54,070; COMERCIAL ESTRELLA LTDA, $301,500; CONFECCIONES Y TEJIDOS NACIONALES LTDA, $549,990; CREACIONES VIVIANA LTDA, $125,025, $50,033, and $50,000; INDUSTRIAS MARATHON LTDA, $805,194.49; MANUFACTURAS INTERNACIONALES LTDA, $599,970; MANUFACTURERA DEL ATLANTICO LTDA, $492,810; SIRACUSA TRADING CO. and the HEIRS OF HERIBERTO CASTRO–MESA, $3,400,000; MANUFACTURAS J.D. LTDA, $98,991; ORGANIZACION J.D. LTDA, $98,990 and $98,800; and CONFECCIONES ELIZABETH LTDA, $40,000.

The evidence of the claimants indicated— if believed—that massive shipments of manufactured garments were sent abroad from modern plants in Colombia to Panama in order to earn dollars legitimately. There they were handed over to ship captains who toured the Caribbean islands trading the garments for goats and local produce, losing some, having some stolen, and with the remainder disposed of through charity in Colombia and other non-traceable channels. Although possible, these and other implausible stories told by claimants' witnesses would justify the jury's skeptical view of the claimants' somewhat inconsistent positions.

The evidence of drug tainting was overwhelming. A flurry of wire transfer activity followed the arrests of the Londono associates Jurado, Garcia, and Mahecha in Luxembourg. There was a sophisticated and complicated series of connections and financial transactions between the various drug-connected players in this case. After a description of one technique described at trial, the evidence will be more generally summarized.

## 1. INDUSTRIAS MARATHON LTDA

■■■ When the Londono associates were arrested in Luxembourg, authorities seized telephone books, documents, and bank records. Garcia had a business card with a bank account number written on the reverse. The same number had appeared on one of the faxes intercepted by the Luxembourg Surété Publique from Jurado's apartment in Luxembourg. The account was at a bank in Guernsey, Channel Islands.

Investigation by the Surété revealed that Garcia earlier had arranged for $805,194.49 to be sent to the Guernsey bank from Panama by a Panamanian shell corporation nominally headed by Heriberto Castro–Mesa and Esperanza Rodriguez de Castro, Londono's parents-in-law. Funds from the account in Panama which was the source of the $805,194.49 had been used in 1987 to open other accounts in the name of Heriberto Castro–Mesa and Esperanza Rodriguez de Castro. The other funds in the Panamanian account were forfeited after the Luxembourg trial of Jurado and Garcia.

When $805,194.49 was electronically transferred to Colombian claimant Industrias Marathon via a New York bank immediately after the arrests in Luxembourg, the money was seized. The testimony of the Analyst Holmes, the C.P.A. Kostoglian, and the former Londono associates confirmed the illicit source of the funds. The evidence was sufficient for a jury to conclude that the funds were the traceable proceeds of illegal drug money-laundering and narcotics transactions, and that claimants were aware of the drug-related sources of the funds.

## 2. OTHER FORFEITED CLAIMS

At the Luxembourg arrests several pocket address books were seized. Garcia's book contained the telephone numbers for representatives of the claimants, linking them with a known money-changer and drug money-launderer, Jairo Carrascal. In Colombia authorities seized a telephone book from another known drug money-launderer, Roberto Juri. Many of the numbers in the two telephone books, seized continents apart, were identical.

Witnesses also testified that the bank accounts and records of the corporate claimants were inconsistent with the conduct of a legitimate clothing manufacturing enterprise. The evidence at trial conclusively established that the corporate records and bank statements revealed a pattern of huge same day deposits and debits reflective of drug money-laundering practices.

Special Customs Agent Steven Haywood of the United States Customs Service set up a phony bank account and entered the drug money-laundering business as a purported money-changer. Periodically he received large amounts of cash driven in cars from the New York City area, originating in cocaine sales there. While conducting his covert money-laundering investigative operation, Haywood was instructed by a money-changer to send electronic funds transfers to corporations including claimants.

Special DEA Agent Robert Michaelis testified that an account at Banco Cafetero in Panama was used by Londono and his associates to store and move narcotics proceeds. The account was identified only by a number. Money was transferred from the Banco Cafetero account to the claimants. Claimants also received electronic funds transfers from several of the identified shell corporations set up by Londono's associates.

Claimants objecting to the verdicts of forfeiture have made no showing that the evidence "reasonably permits only a conclusion in the[ir] favor." *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 573 (2d Cir.), *cert. denied*, 459 U.S. 838, 103 S.Ct. 86, 74

L.Ed.2d 80, *cert. denied sub nom. Louis Sternbach & Co. v. Sirota*, 459 U.S. 908, 103 S.Ct. 213, 74 L.Ed.2d 170 (1982). The verdicts as to each claimant and each claim were supported by the evidence. The motions for judgment notwithstanding the verdict are denied.

### 3. MANUFACTURAS J.D. LTDA—$98,991

### ORGANIZACION J.D. LTDA— $98,990 and $98,800

The jury at trial determined that claimants Manufacturas J.D. and Organizacion J.D. had met their burden of proving that the funds were not the traceable proceeds of illegal drug activity and drug money-laundering transactions. The government apparently does not now contest the jury's conclusions. The evidence which could reasonably have been believed by a jury supports the verdict.

### 4. CONFECCIONES ELIZABETH LTDA—$40,000

The jury at trial determined that even though the funds claimed by Confecciones Elizabeth were the traceable proceeds of illegal drug activity and drug money-laundering transactions, claimant had met its burden of proving that it was an innocent owner. It did not "know," through its books and records or corporate representatives and agents, that the funds in question constituted the traceable proceeds of illegal drug activity and drug money-laundering transactions. The government apparently does not now contest the jury's conclusions. The evidence which could reasonably have been believed by a jury supports the verdict.

## B. MOTION FOR A NEW TRIAL

The court has the power to grant a new trial, even where the verdict was justifiable, to prevent a miscarriage of justice. Under Rule 59(a) of the Federal Rules of Civil Procedure, a court may grant a new trial if

the jury has reached a seriously erroneous result, or ... the verdict is a "miscarriage of justice" i.e. ... the verdict is

against the great weight of the evidence....

*Mallis v. Bankers Trust Co.*, 717 F.2d 683, 691 (2d Cir.1983). The standard is difficult to meet. The claimants have raised a number of arguments in support of their motion for a new trial. Each will be addressed in turn.

### 1. SHIFTING BURDEN OF PROOF

 At the hearing on the post-trial motions claimants posed the question whether the shifting of the burdens of proof in forfeiture cases is constitutional. Were a constitutional violation found, a new trial or dismissal would be required. No such remedy is necessary.

The Second Circuit in *United States v. Banco Cafetero Panama*, 797 F.2d 1154 (2d Cir.1986), discussed the probable cause requirements where moneys in bank accounts are at stake:

> In almost all cases, once the Government has shown probable cause to believe that someone has sold drugs and deposited the proceeds of a drug sale into a bank account, there will be probable cause to believe that the bank account contains "traceable proceeds" of the sale.... The burden will then be on the claimant to demonstrate that no portions of the account ... are "traceable proceeds" of the drug sale.

*Id.* at 1160. The court went on to discuss the concerns about burden-shifting and the difficulty of proof:

> No doubt uncertainty caused by the fungibility of money will make it difficult and in many cases impossible for claimants to satisfy this burden. But it is precisely the function of burden of proof rules to determine which party loses where evidence is lacking or at best ambiguous. Under the Congressional scheme, the risk of uncertainty in determining the traceability of proceeds of drug sales is placed squarely on the claimant, once probable cause has been established.

*Id.*

The district court is bound by the Second Circuit's determination that Congress' allocation of the burdens of proof in forfeiture proceedings is constitutional. *United States v. 228 Acres of Land and Dwelling Located on White Hill Road in Chester, Vt.*, 916 F.2d 808, 812 (2d Cir.1990), *cert. denied sub nom. Moreno v. United States Drug Enforcement Admin.*, ⸺ U.S. ⸺, 111 S.Ct. 972, 112 L.Ed.2d 1058 (1991). The court wrote: "we find nothing unconstitutional in congress's allocation of the burdens of proof in forfeiture cases...." *Id.* at 814; *United States v. $2,500 in United States Currency*, 689 F.2d 10, 12 (2d Cir.1982) (same), *cert. denied sub nom. Aponte v. United States*, 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984); *United States v. $250,000 in United States Currency*, 808 F.2d 895, 901 (1st Cir.1987) (shifting burdens does not violate fifth amendment); *United States v. Santoro*, 866 F.2d 1538, 1544 (4th Cir.1989) ("We ... find the burden-shifting aspect of the statute constitutional."); *United States v. One 1970 Pontiac GTO, 2–Door Hardtop*, 529 F.2d 65, 66 (9th Cir.1976) (per curiam) (imposition of burden of proof on the claimant is not unconstitutional); *Bramble v. Richardson*, 498 F.2d 968, 970 n. 2 (10th Cir.) ("[Claimant]'s conception of the forfeiture proceedings is not entirely accurate.... [T]he burden merely shifts to [him] once probable cause has been established."), *cert. denied sub nom. Bramble v. Saxbe*, 419 U.S. 1069, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974); *see also United States v. Blackwood*, 47 F.2d 849, 851–52 (1st Cir.) (imposing burden of proof on the government was error where probable cause had already been found), *cert. denied*, 284 U.S. 627, 52 S.Ct. 12, 76 L.Ed. 534 (1931). The motion for a new trial on this ground must be denied.

### 2. SEPARATE TRIALS

Claimants argue that they were prejudiced by the court's refusal to grant separate trials. The claimants contend that the jury was unable to keep the evidence separated as to each claimant and ascribed to some claimants evidence of drug tainting related solely to other claimants. Claimants move for a new trial on this ground.

The court first addressed the issue of prejudice from joinder in allocating peremptory challenges among the claimants at the outset of the trial. The jury panel was not large enough to permit each claimant to independently exercise a full set of peremptory challenges. Many potential jurors did not feel they could be fair in a drug-related case. Ultimately a jury representative of the community was selected.

■ Sharing of peremptory challenges was proper because the interests of the claimants were not adverse to one another. *Accord Doralee Estates Inc. v. Cities Serv. Oil Co.*, 569 F.2d 716, 723 (2d Cir.1977) (plaintiff allowed his three challenges but defendant and third-party defendant required to exercise one each and three jointly); *Carey v. Lykes Bros. S.S. Co.*, 455 F.2d 1192, 1194 (5th Cir.1972) (district court's sharing procedure "expressly authorized by Section 1870"); *Moore v. South African Marine Corp.*, 469 F.2d 280, 281 (5th Cir.1972) (no error to require shared challenges even where party objects).

■ Separate trials were not required because the claimants' interests were not hostile. All claimants had the same burden against the government and all wanted the return of their funds. Although some evidence of the background drug money-laundering scheme overlapped, each claimant presented its own evidence to meet its own burden of proving that the funds it claimed were not the traceable proceeds of illegal drug activity and drug money-laundering transactions. The fact that some claimants were required to prove both the legitimate source of funds and that they were innocent owners, whereas others attempted to prove only that they were innocent owners, does not change this conclusion.

Severance would have severely burdened the court and government. *Accord City of New York v. Joseph L. Balkan, Inc.*, 656 F.Supp. 536, 549–50 (E.D.N.Y.1987). Separate trials would have been a waste of judicial resources and would have caused extreme inconvenience to witnesses. The trial was prolonged even in its combined form because of the necessity for translation of the bulk of the testimony and the need to instruct the jury on technical financial matters. Denial of the motion to sever in such circumstances is proper. *Cf. United States v. Marietta Mfg. Co.*, 53 F.R.D. 390, 400 (S.D.W.Va.1971) (motion for separate trial denied to avoid protracted delay and duplication of effort). Whether to order separate trials is, within the discretion of the trial court. *Brown v. Advantage Eng'g*, 732 F.Supp. 1163, 1170 (N.D.Ga. 1990); *Keister v. Dow Chem. Co.*, 723 F.Supp. 117, 120 (E.D.Ark.1989).

That the jury was not confused or claimants prejudiced is reflected in the discriminating verdicts, finding some claims valid and others invalid. The precise questions of the jurors during deliberations, their note-taking, and their calm attentiveness all belied confusion or prejudice. A joint trial was proper.

### 3. OMNIBUS CRIME CONTROL AND SAFE STREETS ACT

■ Claimants charge that the court erred in permitting the government to introduce into evidence wire transfer advises obtained in violation of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. § 2510 *et seq.* (1988 & Supp. III 1991), the federal wiretap statute. The statute prohibits the interception of "electronic communications," which includes a variety of technologies such as electronic funds transfers and electronic communications in storage.

■ The court has already addressed the claimants' arguments, in *Manufacturas International Ltda v. Manufacturers Hanover Trust Co., et al. (Consolidated Bank Cases)*, 792 F.Supp. 180 (E.D.N.Y. 1992). The complaint was dismissed on the ground that the federal wiretap statute does not apply to the seizure of electronic funds transfers by banks following government and court instructions. *See* 792 F.Supp. at 192; 1968 U.S.Code Cong. & Admin.News 2112, 2153; *United States v. Herring*, 933 F.2d 932, 934–35 (11th Cir. 1991) (amendments did not change statute's focus on surveillance and eavesdropping).

The wiretap statute does not apply because in forfeiture proceedings tainted

property is considered forfeited at the moment the illegal act is committed. 18 U.S.C. § 981(b) (1988 & Supp. III 1991); 21 U.S.C. § 881(h) (1988 & Supp. III 1991) ("relation-back" doctrine); *see, e.g., United States v. One Piece of Real Property Located on Trafalgar Street in City of Aiken, S.C.,* 700 F.Supp. 857, 860–61 (D.S.C. 1988) (date on government's title relates back to date of crime), *aff'd sub nom. United States v. Schifferli,* 895 F.2d 987 (4th Cir.1990). As the *Consolidated Bank Cases* court wrote:

> The statute cannot apply where, as here, the government reasonably viewed the funds as its own. The concept that ownership of the object is transferred instantaneously at the time of criminality provides a conceptual distinction making the laws governing wiretapping and interference with communications irrelevant.

792 F.Supp. at 192.

Finally, claimants' unsupported assertion that the introduction into evidence of the wire transfer advises violated the fourth amendment is groundless. The motion for a new trial on this ground is denied.

### 4. NEW YORK BANKS

Claimants contend that the court erred in not overruling the protective order granted by the magistrate judge. The magistrate judge prohibited the claimants from taking depositions or issuing subpoenas to employees of the intermediary New York banks which seized the wire transfers. In their deposition and subpoena requests claimants sought information about the instructions given to the banks by the United States Attorneys.

In *Consolidated Bank Cases,* 792 F.Supp. 180 (E.D.N.Y.1992), the court disposed of claimants' concerns about the seizure of the subject funds by the New York banks. The court dismissed the action for failure to state a claim, noting that the banks were not

> rogue banks seizing funds carelessly or without justification. The intermediary banks were following the precise oral and written instructions of the United States Attorney and the court.

*Id.* at 195. Since electronic funds transfers are effected rapidly, the government must be permitted to act without any interference by the banks. The banks normally should not make any independent determinations.

Where banks act as agents of the court they are protected. *Id.; cf. K/S Norman Agathe v. Sea Trade & Constr., Ltd.,* 767 F.Supp. 60, 62–63 (S.D.N.Y.1991) (same where bank executes writ of attachment). Claimants require nothing further from the employees of the bank. The protective order was proper.

### 5. UNITED STATES ATTORNEYS

Claimants complain that the court granted the government's motion *in limine* barring claimants from calling the United States Attorneys as witnesses at trial. The court has twice addressed claimants' desire to elicit information from the United States Attorneys.

During discovery claimants sought to depose the United States Attorneys involved in this case, but the magistrate judge granted the government's motion for a protective order. The magistrate judge determined that the taking of opposing counsel's deposition is permissible only where (1) there is no other way to obtain the information; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case. *See, e.g., Shelton v. American Motors Corp.,* 805 F.2d 1323, 1327 (8th Cir.1986).

The protective order was granted in part because the information could be obtained elsewhere and in part because it is undesirable for United States Attorneys to appear as witnesses at trial to defend statements made at deposition. The magistrate judge's decision was proper. The court dismissed an action filed by claimants against the United States Attorneys who had instructed the banks to seize the funds. *Abuchaibe Hnos. v. Maltz et al.,* CV 92–528 (oral decision).

The claimants have offered nothing to alter the conclusions reached by the magistrate judge and the district judge. There was no relevant information to be obtained from the United States Attorneys who act-

ed ethically and responsibly in connection with the seizure of wire transfers at the New York correspondent banks.

### 6. EXPERT TESTIMONY

■ Claimants objected to the court's permitting DEA Intelligence Analyst Holmes and Special DEA Agent Michaelis to testify and to state opinions. Agent Michaelis testified on the basis of the evidence and known drug money transfer techniques that several of the electronic wire transfers were intended for receipt by José Santa Cruz Londono. There was also testimony about the existence of an overall drug money-laundering scheme. This testimony was based on the evidence at trial as well as the expertise of the witness.

■ Given the complex nature of the evidence, the jury was aided by this expert testimony. *See* Fed.R.Evid. 702, 703. Its probative force heavily outweighed any prejudice. *Id.* Rule 403. DEA agents may testify as experts on illegal activities such as narcotics dealing. *United States v. Campino*, 890 F.2d 588, 593 (2d Cir.1989), *cert. denied,* — U.S. —, 111 S.Ct. 179, 112 L.Ed.2d 143 *cert. denied sub nom. Estrada Ruiz v. United States*, 494 U.S. 1068, 110 S.Ct. 1787, 108 L.Ed.2d 788 (1990). Sophisticated drug money-laundering activities, such as those relied upon by claimants, are a proper subject for expert testimony. The methods of moving of currency internationally and the maintaining of corporate and bank records are not subjects easily understood without some expert assistance. The jury was repeatedly admonished not to substitute the experts' opinions for the jury's own conclusions about the veracity of the testimony and the meaning of the records which constituted the bulk of the evidence.

The court has broad discretion in determining the qualifications of and need for expert witnesses. *Hamling v. United States*, 418 U.S. 87, 108, 94 S.Ct. 2887, 2903, 41 L.Ed.2d 590 (1974). Claimants have not demonstrated that the court's determination was "manifestly erroneous." *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962). The witnesses were properly quali-

fied and their limited testimony useful and non-prejudicial.

### 7. BEST EVIDENCE RULE

■ Claimants argue that the government's expert accounting witness should not have been permitted to testify as to capital investment, accounting and banking practices, and estimated profits from business enterprises. The testimony was amply supported by, and required by, the huge amount of financial documentary evidence.

Claimants argue that this testimony violates the best evidence rule. The best evidence rule refers to and governs the admission of the contents of "a writing, recording, or photograph." *See* Fed.R.Evid. art. X. It has no application to the testimony of an expert witness summarizing and analyzing evidence already in the record. *Cf. id.* Rule 1006. The objection is groundless.

### C. MOTION TO RELEASE RES

Claimants Manufacturas J.D. and Organizacion J.D., which sustained their burden at trial of proving that their claimed funds were not the traceable proceeds of illegal drug activity and drug money-laundering transactions, move for the immediate release of their funds. The government seeks a delay in the release of funds on the ground that Johnny Daccarett, the owner and legal representative of claimant corporations Manufacturas J.D. and Organizacion J.D., is a fugitive.

The government contends that Johnny Daccarett has a prior conviction for trafficking in approximately two tons of marijuana. There is also an outstanding indictment against him in New Jersey for tax violations. It is the government's position that since Daccarett is a fugitive, the claimant corporations he represents should be barred under the disentitlement doctrine from receiving funds they rightfully claim.

■ The disentitlement doctrine provides that one who is a fugitive from justice cannot seek relief from the judicial system the authority of which he is flouting by fleeing prosecution. If a party is avoiding prosecution for a crime, he cannot

lay claim to money or property in a related civil proceeding. *See, e.g., United States v. 760 S.W. 1st Street, Miami, Fla.,* 702 F.Supp. 575, 577 (W.D.N.C.1989) ("[since he] fits the definition of a fugitive, ... he may not demand to use the resources of this Court in a civil action to claim property").

### 1. FUGITIVE STATUS

The first question is whether Daccarett can be considered a fugitive. Claimants Manufacturas J.D. and Organizacion J.D. contend that there has been no showing that Daccarett was ever in this jurisdiction, let alone a showing that he fled to avoid prosecution.

■■■■ A person can be a fugitive even when he does not "flee" but is simply found outside the jurisdiction. *See Jhirad v. Ferrandina,* 536 F.2d 478, 483–84 (2d Cir.) (no meaningful distinction between those who leave the jurisdiction and those who have already left and decide not to return), *cert. denied,* 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976); *United States v. 218 Panther Street, Newfoundland, Pa.,* 745 F.Supp. 118, 121 (E.D.N.Y.1990) ("An individual who learns of charges against him while legally outside the jurisdiction 'constructively flees' by deciding not to return."), *aff'd sub nom. United States v. Eng,* 951 F.2d 461 (2d Cir.1991). To be considered a fugitive, the individual need not flee or "constructively flee" with the intent of avoiding a pending or intended prosecution. *United States v. Real Property Located at Incline Village,* 755 F.Supp. 308, 309 (D.Nev.1990) ("whether [he] left before or after ... indictment is irrelevant"; nor need there even be an official indictment handed down). Even where an individual is in prison elsewhere or it is otherwise impossible for him to leave, he can be considered a fugitive. *See, e.g., United States v. Eng,* 951 F.2d 461, 464 (2d Cir.1991) ("One may flee even though confined in prison in another jurisdiction.").

It is critical to show that the person sought in the criminal proceeding knows he is wanted by the authorities and then fails to submit to arrest. *See United States v. Pole No. 3172, Hopkinton,* 852 F.2d 636, 644 (1st Cir.1988) ("Perhaps most importantly, there is no evidence that [the claimant] had notice of this proceeding...."); *United States v. Ballesteros–Cordova,* 586 F.2d 1321, 1323–24 (9th Cir.1978) (intent to avoid prosecution, making an individual a fugitive, can be inferred where he knows the authorities want him and he fails to surrender); *United States v. Real Property Located at Incline Village,* 755 F.Supp. 308, 309 (D.Nev.1990) (noting that individual was "aware of both the indictment and the civil forfeiture action"); *United States v. Schreiber,* 535 F.Supp. 1359, 1363 (S.D.N.Y.1982) (individual who left the country in 1964 became a fugitive in 1966 when he learned he was under indictment and made no effort to return).

■■■] We assume that Daccarett was aware of the criminal charges pending against him since the government brought this fact to claimants' attention, and, through them, to their representative Daccarett. There was no legal barrier to his return to the United States. He should be, and is, treated as a fugitive.

### 2. "DISENTITLEMENT" DOCTRINE

■■■] An individual who is a fugitive can be barred by the disentitlement doctrine from receiving seized funds. By extension, the government's position is that the claimant corporations which Daccarett represented should also be prevented from receiving the funds they claim. A brief explanation of the disentitlement doctrine and its development is necessary to understand the parties' positions.

The first statement of the disentitlement doctrine was in the context of a criminal proceeding, where the Supreme Court declined to adjudicate an appeal from the merits of a conviction where the appellant was a fugitive. *Molinaro v. New Jersey,* 396 U.S. 365, 366, 90 S.Ct. 498, 499, 24 L.Ed.2d 586 (1970). Courts extended this doctrine to bar a fugitive from participating in a civil proceeding based on a prior criminal proceeding. In *Conforte v. Commissioner,* 692 F.2d 587, 589–90 (9th Cir.

1982), the Ninth Circuit held that a fugitive could not contest the assessment of tax liabilities in a civil proceeding where he was a fugitive from the related criminal tax proceeding.

 Finally, in 1985 the Ninth Circuit held that the disentitlement doctrine should apply in civil forfeiture proceedings. *United States v. $129,374 in United States Currency*, 769 F.2d 583, 587–88 (9th Cir. 1985), *cert. denied sub nom. Geiger v. United States*, 474 U.S. 1086, 106 S.Ct. 863, 88 L.Ed.2d 901 (1986). The doctrine bars not only the fugitive but also the fugitive's successor from contesting the forfeiture while at the same time resisting prosecution in a related criminal action. *Id.* at 587. No case has been found addressing the question now posed: whether a corporation represented by a fugitive should also be barred by the disentitlement doctrine from claiming funds in a forfeiture proceeding.

 A trial court has discretion in applying the disentitlement doctrine. *United States v. Veliotis*, 586 F.Supp. 1512, 1514 (S.D.N.Y.1984) ("this matter resides within the sound discretion of the Court"). The reasons for exercising discretion in the claimants' favor are overwhelming. First, in this case no credible evidence has been submitted demonstrating that the "fugitive" controls any claimant or that he will receive the benefit of proceeds returned to a claimant. Nor is there any evidence to suggest that Daccarett is flouting the judicial system in this forfeiture case. On the contrary, the attorney for claimants Manufacturas J.D. and Organizacion J.D. asserts that Daccarett has been willing to be deposed in person at an embassy in Colombia or by telephone but the government has refused.

Finally, the civil forfeiture is independent of the criminal case pending against Daccarett. In disentitlement cases the criminal indictment, prosecution, or potential prosecution should be related to the forfeiture proceeding. *United States v. $129,374 in United States Currency*, 769 F.2d 583, 588 (9th Cir.1985) ("[the] criminal conviction and the property involved ... are integrally related parts of the same unlawful drug dealing scheme"), *cert. denied sub nom. Geiger v. United States*, 474 U.S. 1086, 106 S.Ct. 863, 88 L.Ed.2d 901 (1986); *Schuster v. United States*, 765 F.2d 1047, 1049 (11th Cir.1985) ("no question that the civil case ... is related to the criminal case"); *United States v. $45,940 in United States Currency*, 739 F.2d 792, 794 (2d Cir.1984) (question is whether his fugitive "status bars him from defending *the related forfeiture proceeding*") (emphasis added). In this *All Funds* case, the indictment at issue is in a different district and it is for tax violations. The government has not suggested that the tax violations are related to the drug money-laundering activities underlying this *All Funds* action.

It is the claimant corporations, Manufacturas J.D. and Organizacion J.D., which prevailed at trial—not Johnny Daccarett. The government has shown no persuasive reason to bar the corporate claimants from receiving their funds. The jury found that the funds were not the traceable proceeds of illegal drug activity and drug money-laundering transactions. Daccarett's status as a fugitive is irrelevant. The motion to release the res must be granted.

## D. MOTION TO STAY JUDGMENT AND WAIVE SUPERSEDEAS BOND

 Claimants Abuchaibe Hnos., Comercial Estrella Ltda, Confecciones y Tejidos Ltda, Creaciones Viviana Ltda, Industrias Marathon Ltda, Manufacturas Internacionales Ltda, and Manufacturera del Atlantico Ltda move for an order staying execution of judgment pending appeal without posting a supersedeas bond.

Since the funds are in the possession of the court and gathering interest, there will be no prejudice to the government from a stay of execution of judgment. Nor is there any risk that the property will be removed:

Unlike the typical case where the defendant ship stealthily absconds from port and leaves the plaintiff with no *res* from which to collect, here the defendant *res* is in the possession of the United States and thus in no danger of disappear-

ing.... Having prevailed below, the government, if it wins on appeal is assured of execution regardless of whether [claimant] files a bond or stays execution of the judgment.

*United States v. $95,945.18 in United States Currency*, 913 F.2d 1106, 1109 (4th Cir.1990); *see also United States v. One Lot of $25,721 in Currency*, 938 F.2d 1417, 1419 (1st Cir.1991) (supersedeas bond not required).

## IV. CONCLUSION

The jury's verdict of forfeiture of eighteen of the twenty-two amounts seized is fully supported by the evidence. The motions for judgment notwithstanding the verdict are denied. No errors warrant granting the motions for a new trial. The amounts claimed by Manufacturas J.D. and Organizacion J.D. are ordered released in seven days from the date of this memorandum; the delay will permit application for a stay in the Court of Appeals. Execution of the judgment of forfeiture of funds claimed by Abuchaibe Hnos., Comercial Estrella Ltda, Confecciones y Tejidos Ltda, Creaciones Viviana Ltda, Industrias Marathon Ltda, Manufacturas Internacionales Ltda, and Manufacturera del Atlantico Ltda is stayed during the pendency of the appeal. No supersedeas bond is required.

SO ORDERED.