UNITED STATES of America,
Plaintiff–Appellee,

v.

$40,877.59 IN UNITED STATES
CURRENCY, Defendant,

Anas Malik Dohan, Claimant–Appellant.

No. 93–2401.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 3, 1994.

Decided Aug. 17, 1994.

Donna Eide (argued), Office of the U.S. Atty., Indianapolis, IN, for plaintiff-appellee.

Michael Vatis, Mayer, Brown & Platt, Washington, DC, for defendant.

Michael Vatis, Alan E. Untereiner (argued), Michael R. Bromwich, Mayer, Brown & Platt, Washington, DC, for appellant.

Before CUMMINGS and CUDAHY, Circuit Judges, and ROSZKOWSKI, District Judge.*

ROSZKOWSKI, District Judge.

This is an appeal from a default judgment entered by the district court for the Southern District of Indiana. The district court applied the fugitive disentitlement doctrine to bar the claimant-appellant from contesting the forfeiture of the defendant funds. In this action, filed pursuant to 18 U.S.C. § 981, we are called upon to decide whether that doctrine should be expanded to apply to civil forfeitures to bar fugitive-claimants from defending against the seizure of their property by the United States government. For the reasons that follow, we hold that the doctrine should not be applied in such actions.

Claimant–Appellant, Anas Malik Dohan, is an Iraqi businessman residing in Amman, Jordan. In October of 1989, Dohan made a brief trip to the United States, apparently his first and only trip to this country. While visiting his brother in Indianapolis, Indiana, Dohan opened an account at the Indiana National Bank. The funds in that account are the subject of this forfeiture action.

The following summer, in August of 1990, Iraq invaded Kuwait, precipitating the Persian Gulf War. Immediately thereafter, President George Bush issued Executive Orders 12722 and 12724 which prohibited the exportation of goods to Iraq. In April of 1991, Dohan and two other individuals were indicted in the Eastern District of Virginia for the violation of those Executive Orders by allegedly shipping, or conspiring to ship, high technology equipment to Iraq. One defendant, Mohammad Jafar, was tried and acquitted; the charges against another co-defendant, Zaid Jafar, were dismissed. Dohan remains the subject of that federal indictment. He has resided in Jordan since the Gulf War and has not travelled to the United States to defend the charges.

On October 31, 1991, United States Customs Service agents seized all of the funds in Dohan's bank account, and the government initiated forfeiture proceedings in the Southern District of Indiana alleging that the defendant funds were involved in illegal transactions or attempted transactions by Dohan. On December 21, 1992, Dohan filed a claim of ownership to the funds. The government moved to strike Dohan's claim, contending that he was a fugitive from justice and therefore "disentitled" from defending against the forfeiture action. The district court granted the motion. The government then moved for a default judgment, which the court granted on May 27, 1993. Thus, without a hearing of any kind, judgment was entered forfeiting the defendant funds to the United States.

■ The fugitive disentitlement doctrine began as an equitable doctrine of criminal appellate procedure to be applied at the discretion of the appellate court. It was developed over a century ago by the Supreme Court in *Smith v. United States,* 94 U.S. 97, 24 L.Ed. 32 (1876), where it was used to dismiss the appeal of a convicted criminal who became a fugitive during the pendency of his appeal. In early opinions, the Court applied the doctrine out of concern that a judgment adverse to the fugitive-appellant would not be enforceable against him. *Id.* at 97; *Bonahan v. Nebraska,* 125 U.S. 692, 8 S.Ct. 1390, 31 L.Ed. 854 (1887); *Eisler v. United States,* 338 U.S. 189, 69 S.Ct. 1453, 93 L.Ed. 1897 (1949). The Court also thought it unfair that the fugitive-appellant could accept the benefits from a favorable adjudication of his appeal, but could choose to avoid the consequences of an adverse adjudication. *Smith,* 94 U.S. at 97.

Since then, the Supreme Court has offered other rationale for the doctrine. The Court

---

* The Honorable Stanley J. Roszkowski, District Judge for the Northern District of Illinois, Western Division, is sitting by designation.

has reasoned that a fugitive's escape acts as a waiver of his right to appeal; that disentitlement serves an important deterrent function; and that disentitlement promotes an efficient and dignified appellate practice. *Molinaro v. New Jersey,* 396 U.S. 365, 366, 90 S.Ct. 498, 498, 24 L.Ed.2d 586 (1970); *Estelle v. Dorrough,* 420 U.S. 534, 537, 95 S.Ct. 1173, 1175, 43 L.Ed.2d 377 (1975); *Ortega–Rodriguez v. United States,* —— U.S. ——, ——, 113 S.Ct. 1199, 1204–05, 122 L.Ed.2d 581 (1993).

Some circuits have expanded the doctrine, using it in civil suits against a fugitive from a separate criminal case who seeks affirmative relief from the court. *See, e.g., Doyle v. United States,* 668 F.2d 1365 (D.C.Cir.1981), *cert. denied,* 455 U.S. 1002, 102 S.Ct. 1636, 71 L.Ed.2d 870 (1982); *Schuster v. United States,* 765 F.2d 1047 (11th Cir.1985); *Conforte v. Commissioner,* 692 F.2d 587 (9th Cir.1982); *Broadway v. City of Montgomery,* 530 F.2d 657 (5th Cir.1976). Four Circuits have expanded the doctrine further, upholding its use by district courts in civil forfeiture proceedings to bar fugitives from defending against the confiscation of their property by the United States government. These cases hold that a claimant who is a fugitive in a related criminal proceeding should not be allowed to defend against the forfeiture because he has "flouted" the authority of the court and thus waived his right to due process. *See, e.g., United States v. Eng,* 951 F.2d 461 (2d Cir.1991); *United States v. $45,-940 in United States Currency,* 739 F.2d 792 (2d Cir.1984); *United States v. $129,374 in United States Currency,* 769 F.2d 583 (9th Cir.1985), *cert. denied sub nom. Geiger v. United States,* 474 U.S. 1086, 106 S.Ct. 863, 88 L.Ed.2d 901 (1986); *United States v. Timbers Preserve, Routt County, Colorado,* 999 F.2d 452 (10th Cir.1993); *United States v. One Parcel of Real Estate at 7707 S.W. 74th Lane, Miami, Dade County, Florida,* 868 F.2d 1214 (11th Cir.1989).

The First Circuit was confronted with this issue in a forfeiture action, but rejected the use of the doctrine in the particular case.

*United States v. Pole 3172, Hopkinton,* 852 F.2d 636, 643–44 (1st Cir.1988). That court has not ruled on the applicability of the doctrine to civil forfeitures in general. *Id.* The Third Circuit has not decided the issue, but has indicated that they would probably allow the use of the doctrine in civil forfeitures based on *United States v. Eng. United States v. Contents of Accounts Nos. 3034504504 and 144–07143 at Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 971 F.2d 974, 987 n. 9 (3rd Cir.1992).

The Sixth Circuit, however, has disallowed the use of the doctrine in civil forfeitures. In *United States v. $83,320 in United States Currency,* 682 F.2d 573 (6th Cir.1982), the court was asked to dismiss the appeal of the claimant because he was a fugitive. They refused to do so, holding that *Molinaro* and related cases were sufficiently distinguishable from forfeiture cases as to make an expansion of the doctrine unwarranted. *Id.* at 576. The court was also concerned about the rights of non-fugitives whose claims would be barred because the fugitive could not bring a claim. *Id.* They held that a claimant's fugitive status should not be allowed to prevent others who may have an interest in the defendant property from asserting a claim.[1]

■ The Supreme Court has not reviewed any case in which the doctrine was used by a district court in a civil forfeiture proceeding to bar a fugitive from asserting a claim to the property. However, the Supreme Court has established that notwithstanding an individual's status, where he is vulnerable to being sued, he has the right to defend himself in the action brought against him; that the constitutional right to defend is inseparable from the liability to suit. *McVeigh v. United States,* 78 U.S. (11 Wall.) 259, 20 L.Ed. 80 (1870); *Hovey v. Elliott,* 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215 (1897). We think that the right to defend applies to fugitives as well.

In *McVeigh v. United States,* the Supreme Court ruled that an alien enemy had the right to defend his property in a forfeiture

---

1. Because of the possibility that this opinion creates tension between the circuits, it was circulated among all judges in active service pursuant to

Seventh Circuit Rule 40(f). No judge favored a rehearing en banc. Judge Flaum did not participate in the voting.

proceeding initiated by the government. 78 U.S. 259. The government contended that McVeigh, as an alien enemy, "could have no locus standi in that forum." *Id.* at 267. But the Court held that "if assailed there, he could defend there. The liability and the right are inseparable. A different result would be a blot upon our jurisprudence and civilization.... Whatever may be the extent of the disability of an alien enemy to sue in the courts of the hostile country, it is clear that he is liable to be sued, and this carries with it the right to use all the means and appliances of defence." *Id.* (citations omitted).

The Supreme Court confronted a similar issue in *Hovey v. Elliott,* 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215. In that case, the Court considered whether a defendant's answer could be stricken and a default judgment entered against him because he was in contempt of court. The Court ruled that to deny a person the right to defend himself or his property as punishment for contempt is a violation of due process. *Id.* at 413–14, 17 S.Ct. at 843. Citing a long line of authority, the Court held that a contemnor is not entitled to be heard on matters of "mere favor", but cannot be deprived of his right to defend an action against his person or his property. *Id.* at 423–24, 17 S.Ct. at 846–47.

More recently, in *United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985), the Supreme Court applied this principle to the fugitive disentitlement doctrine. In *Sharpe,* the defendant's conviction was reversed on appeal to the Fourth Circuit. After the Supreme Court granted the government's petition for certiorari, the defendant became a fugitive. But the Court refused to apply the doctrine and instead reviewed the case on the merits, asking the defendant-appellee's attorney to submit an amicus brief. In its opinion, the Court stated that it would be inappropriate, and against the weight of the Court's decisions on disentitlement, to apply the doctrine "in those very different circumstances" where the government, and not the fugitive, initiates the action. *Id.* at 681–82 n. 2, 105 S.Ct. at 1572–73 n. 2. Thus, the Supreme Court has determined that it will not apply the doctrine

when the fugitive is responding to government action. Such is the case in civil forfeitures: the government, and not the claimant, initiates the proceedings.

Dohan does not seek a "mere favor" from the court. Like the owner of property in any forfeiture proceeding, though labeled a claimant and allocated the burden of proof, he is clearly in a defensive position. *Societe Internationale v. Rogers,* 357 U.S. 197, 210, 78 S.Ct. 1087, 1094, 2 L.Ed.2d 1255 (1958); *United States v. Pole No. 3172, Hopkinton,* 852 F.2d at 643. To characterize it otherwise would be mere legal fiction. The government has initiated the proceedings to deprive claimant of his property; he is not in court as the initiator of the action, but rather is defending that action against his property.

A fugitive-claimant is in a position similar to a party in contempt of court. In this case and in those forfeiture cases that have applied the doctrine, the fugitive has been punished for "flouting" the authority of a court in another proceeding. *See Ortega–Rodriguez,* —— U.S. at ——, 113 S.Ct. at 1206 (citing *United States v. DeValle,* 894 F.2d 133, 138 (5th Cir.1990); *United States v. Persico,* 853 F.2d 134, 137–38 (2nd Cir.1988); *Ali v. Sims,* 788 F.2d 954, 958–59 (3rd Cir.1986); *United States v. London,* 723 F.2d 1538, 1539 (11th Cir.1984), *cert. denied,* 467 U.S. 1228, 104 S.Ct. 2684, 81 L.Ed.2d 878 (1984)); *see also, e.g., United States v. Eng,* 951 F.2d 461 (2d Cir.1991); *United States v. $45,940 in United States Currency,* 739 F.2d 792 (2d Cir.1984); *United States v. $129,374 in United States Currency,* 769 F.2d 583 (9th Cir.1985), *cert. denied sub nom. Geiger v. United States,* 474 U.S. 1086, 106 S.Ct. 863, 88 L.Ed.2d 901 (1986); *United States v. One Parcel of Real Estate at 7707 S.W. 74th Lane, Miami, Dade County, Florida,* 868 F.2d 1214 (11th Cir. 1989). *Hovey* suggests that punishing the fugitive-claimant by barring his right to defend may be a violation of due process.

◼ In our criminal law, a defendant-fugitive cannot be found guilty by default because of his fugitive status. While under certain circumstances he may be tried in absentia, there is nonetheless a trial—the government must make its case, and the fugitive's attorney can fully participate in the

proceeding. *Diaz v. United States,* 223 U.S. 442, 455, 32 S.Ct. 250, 253, 56 L.Ed. 500 (1912). The fugitive may be deemed to have waived his right to be present and to confront witnesses, but he does not waive his right to a trial. *Id.* The government is not relieved of the burden of proving its case, and the court is not excused from following the procedures put in place to ensure the fairest possible judgment. The Court in *Hovey* found "no distinction" between the case in which the defendant is in contempt in a civil proceeding and that in which the defendant is in contempt in a criminal proceeding. To strike the defendant's answer in the civil case "would be as flagrant a violation of the rights of the citizen as [striking the defendant's answer in the criminal case]; the one as pointedly as the other would convert the judicial department of the government into an engine of oppression, and would make it destroy great constitutional safeguards." *Hovey,* 167 U.S. at 419, 17 S.Ct. at 845.

When applying the doctrine in government initiated civil forfeiture actions, the real injustice is that the government is allowed to confiscate property on mere allegation. By simply alleging in the complaint that the claimant is a fugitive and the property is related to the alleged crime from which he has fled, the government can bar the claimant from defending his property. At most, the government would be required to have a probable cause warrant issued *ex parte.* Such a proceeding is inadequate and unreliable, and clearly an insufficient basis on which to justify a forfeiture.

 Recently, the Supreme Court recognized that an *ex parte* probable cause hearing is an unreliable proceeding to determine the forfeitability of property. *United States v. Daniel Good Real Property,* — U.S. —, —, 114 S.Ct. 492, 502, 126 L.Ed.2d 490 (1993). In *Good,* the Court held that an *ex parte* pre-seizure hearing is an insufficient procedure to justify even a temporary impairment of one's property rights, even though there will be a full post-seizure hearing.

In issuing a warrant of seizure, the magistrate judge need determine only that there is probable cause to believe that the real property was [used, or intended to be used, in the commission of a crime]. The Government is not required to offer any evidence on the question of innocent ownership or other potential defenses a claimant might have. Nor would that inquiry, in the *ex parte* stage, suffice to protect the innocent owner's interest. "[F]airness can rarely be obtained by secret, one-sided determination of facts decisive of rights. . . . No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it."

*Id.* (citations omitted) (quoting *Joint Anti– Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 170–72, 71 S.Ct. 624, 647–49, 95 L.Ed. 817 (1951)). If a probable cause warrant, issued *ex parte,* is not sufficient to temporarily deprive an owner of the use of his property until a full hearing is held, then clearly it is an insufficient basis on which to justify a permanent loss by forfeiture.

Circuits that apply the doctrine emphasize that the property must be related to the alleged crime. *See, e.g., United States v. Eng,* 951 F.2d 461, 466 (2d Cir.1991); *United States v. Timbers Preserve, Routt County, Colorado,* 999 F.2d 452, 454 (10th Cir.1993); *United States v. One Parcel of Real Estate at .7707 S.W. 74th Lane, Miami, Dade County, Florida,* 868 F.2d 1214, 1216 (11th Cir.1989). But relatedness is exactly what the hearing in a forfeiture action is intended to determine. Without a hearing, the only evidence of relatedness is the government's allegation. Also, for the doctrine to apply, the claimant must be a fugitive, and there may be considerable question whether the claimant is actually a fugitive, as there is in this case. Again, without a hearing, the only evidence that the defendant is a fugitive is the government's allegation. Thus, with artful pleading, the government could confiscate all of a fugitive's property, indeed, even the property of some individuals who prove to be non-fugitives, all on mere allegation.

The forfeiture act authorizes the forfeiture of property only when it has been illegally obtained or used. It does not authorize the forfeiture of property simply because the

owner is a fugitive, but by using a combination of the forfeiture laws and the fugitive disentitlement doctrine, the government is allowed to do just that.

The Supreme Court's recent decision in *Ortega–Rodriguez* further illustrates the inappropriateness of the doctrine to civil forfeitures. Writing for the Court, Justice Stevens stated that the Court could not "accept an expansion ... that would allow an appellate court to sanction by dismissal any conduct that exhibited disrespect for any aspect of the judicial system, even where such conduct had no connection to appellate proceedings. Such a rule would sweep far too broadly." *Ortega–Rodriguez,* —— U.S. at ——, 113 S.Ct. at 1207. We think that a rule allowing a district court to use the fugitive disentitlement doctrine in civil forfeitures would sweep far too broadly. Here, the fugitive's disrespectful conduct is to another court in another action. In forfeiture cases, the claimant's fugitive status does not threaten the integrity of the forfeiture proceeding. The judgment is fully enforceable since the property is in the court's control; the fugitive would suffer the consequences of an adverse adjudication. Nor is his presence needed to conduct an adversarial hearing, and it could not be compelled in a civil action even if he were not a fugitive. "The sanction of appellate dismissal should not be wielded indiscriminately as an all-purpose weapon against defendant misconduct." *Id.* Certainly, this is even more true at the district court level.

The doctrine is valid when applied at the appellate level in the same case from which the defendant-appellant is a fugitive, but we think it inappropriate when applied by a district court to civil forfeitures. When applied at the appellate level, the court is refusing to upset the judgment of the district court, rendered after a fair hearing. The fugitive has already had an opportunity for due process to safeguard the judgment which found him guilty. However, when the district court applies the doctrine, it in fact renders a judgment without a consideration of the evidence. The status quo is altered, property is redistributed, and all without any hearing whatsoever on the merits of the cause.

■ The government already enjoys a tremendous procedural advantage under the forfeiture laws. It merely needs to show probable cause to believe that the property was used to promote illegal activity. 19 U.S.C. § 1615. The burden then shifts to the claimant to prove by a preponderance of the evidence that the property was not involved in any illegal activity. *Id.* By seeking an expansion of the doctrine, the government asks this court to increase their advantage even further. But there is no valid reason to expand this doctrine. A hearing is only a slight burden on the government. The claimant bears the ultimate burden of proof, and by failing to appear, he may impair his own ability to carry that burden. *United States v. Pole 3172, Hopkinton,* 852 F.2d at 643. A fugitive-claimant should be treated like any other absent civil litigant, and prejudice to the opposing party should be redressed subject to the rules set up for that purpose. *Id.* at 644.

■ This case illustrates the unfairness of applying the doctrine to civil forfeitures. First, Dohan's fugitive status is questionable. The Supreme Court has held that to be a fugitive, the defendant must intentionally take a material step towards commission of the crime while in the state and then absent himself from that state. If the crime is then completed while he is outside the state, he would become a fugitive. *Strassheim v. Daily,* 221 U.S. 280, 285, 31 S.Ct. 558, 560, 55 L.Ed. 735 (1911). In addition, this court has held that to be a fugitive, a defendant must flee the state with the intent to avoid prosecution. *United States v. Marshall,* 856 F.2d 896, 899–900 (7th Cir.1988).

To establish Dohan's fugitive status, the government would be required to satisfy *Strassheim* and *Marshall.* The government failed to do so in this case. Since the Executive Orders were not in effect when he was in the United States, it is questionable whether Dohan committed an act in furtherance of the alleged crime while in this country, or fled the country with the intent to avoid prosecution. But without any hearing whatsoever on the issue of his fugitive status, the

doctrine was used to bar Dohan from asserting a claim to his property.

Second, Dohan's property was seized on minimal evidence that it was illegally used or obtained. Since the government was unable to convict one co-defendant and dismissed the charges against the other co-defendant, it is questionable that a crime was committed. Thus, in the forfeiture action, it seems that the government would have had difficulty proving that the funds were illegally used or obtained. Yet, without any hearing, Dohan's property was forfeited to the United States government.

Although a fugitive's conduct may be an affront to the court, it is a greater stain on our jurisprudence for the court in turn to discard those procedures that safeguard right and fair decisions. Due process of law, guaranteed by the Fifth and Fourteenth Amendments, is fundamental to our system of justice. "The fundamental conception of a court of law is condemnation only after a hearing." *Hovey*, 167 U.S. at 413–14, 17 S.Ct. at 843. The courts have a duty to render just decisions that are in accordance with the law, and without a fair hearing, that cannot be done. Though individuals may act disrespectfully to the court, the court must nonetheless act justly. To do otherwise is a greater insult to the dignity of the court than any fugitive could perpetrate.

The Supreme Court in *Hovey* could have been writing about the use of the fugitive disentitlement doctrine in civil forfeiture actions when it said:

> Can it be doubted that due process of law signifies a right to be heard in one's defense? If the legislative department of the government were to enact a statute conferring the right to condemn the citizen without any opportunity whatever of being heard, would it be pretended that such an enactment would not be violative of the constitution? If this be true, as it undoubtedly is, how can it be said that the judicial department—the source and fountain of justice itself—has yet the authority to render lawful that which, if done under express legislative sanction, would be violative of the constitution. If such power obtains, then the judicial department of the

government, sitting to uphold the constitution, is the only one possessing the power to disregard it. If such authority exists, then, in consequence of their establishment, to compel obedience to law, and to enforce justice, courts possess the right to inflict the very wrongs which they were created to prevent.

*Id.* at 417–18, 17 S.Ct. at 844.

The forfeiture act is a formidable weapon in the government's arsenal, and when properly enforced, serves the public good. Certainly, if property is illegally obtained or used to promote illegal activities, it should be forfeited to the United States government. Criminals should not profit from their crimes. However, property that is not illegally obtained or used should not be forfeited, and cannot be forfeited under the civil forfeiture act, even if the owner of that property is a fugitive. If the fugitive cannot prove the innocent ownership of the property, he will lose that property. If he can prove innocent ownership, the property should not be forfeited in any event. The only way to make a just determination of whether that property is forfeitable is to afford the claimant an opportunity to be heard.

The judgment of the district court is therefore reversed, and the cause is remanded for a hearing on the merits of the forfeiture.