JOHNNY DACCARETT-GHIA, ALTER EGO OR NOMINEE OF FRIKO CORPORATION, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Daccarett-Ghia v. Commissioner
Docket No. 22854-92
United States Tax Court
T.C. Memo 1994-594; 1994 Tax Ct. Memo LEXIS 602; 68 T.C.M. (CCH) 1336; December 5, 1994, Filed *602 An appropriate order of dismissal and decision will be entered. For petitioner: Isidoro Rodriguez. For respondent: Julius Gonzalez. JACOBS, PANUTHOS
JACOBS
MEMORANDUM OPINION JACOBS, Judge: This case was assigned to Chief Special Trial Judge Peter J. Panuthos pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the opinion of the Chief Special Trial Judge, which is set forth below. OPINION OF THE CHIEF SPECIAL TRIAL JUDGE PANUTHOS, Chief Special Trial Judge: This matter is before the Court on remand from the U.S. Court of Appeals for the District of Columbia Circuit. Friko Corp. v. Commissioner, 26 F.3d 1139 (D.C. Cir. 1994). Specifically, by Order of Dismissal and Decision entered January 6, 1993, we had granted respondent's Motion to Dismiss the petition *603 filed by Johnny Daccarett-Ghia (petitioner) on the grounds that, as a fugitive from justice, petitioner would not be permitted to prosecute his case in this Court. In Friko Corp. v. Commissioner, supra, the Court of Appeals vacated our Order dismissing this case and remanded the matter to this Court for consideration of the use of the so-called fugitive disentitlement doctrine in light of a recent Supreme Court decision, Ortega-Rodriguez v. United States, 507 U.S.    , 113 S. Ct. 1199 (1993). After consideration of our mandate from the Court of Appeals, we hold that there is a connection between the criminal charges pending against petitioner and the tax deficiencies determined by respondent sufficient to apply the fugitive disentitlement doctrine. Accordingly, for the reasons that follow, we will grant respondent's Motion to Dismiss. Background
Petitioner is a Colombian national and is the president and a shareholder of Friko Corp. (Friko). Friko is a foreign corporation organized under the laws of the Republic of Panama with its principal place of business in Barranquilla, Colombia. On February 7, *604 1990, the U.S. District Court for the District of New Jersey issued a warrant for petitioner's arrest. On February 15, 1990, a criminal indictment was filed in the same court charging approximately 30 individuals and corporations, including petitioner and Friko, with various money-laundering violations. United States v. Montes Cardona, Crim. No. 90-69 (AJL). The indictment states in pertinent part that the defendants * * * knowingly and wilfully did combine, conspire, confederate and agree with each other and others to: (a) knowingly and wilfully, and for the purpose of evading the reporting requirements of 31 U.S.C. sec. 5313(a), structure and assist in structuring transactions for the payment, receipt and transfer of United States currency of more than $ 10,000.00 with domestic financial institutions, contrary to Title 31, Code of Federal Regulations, Section 103.22; and (b) knowingly and wilfully conduct and attempt to conduct financial transactions which in fact involved the proceeds of specified unlawful activity knowing that the property involved represented some form of unlawful activity and that the transaction was designed *605 in whole and in part (1) to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of specified unlawful activity, and (2) to avoid a transaction reporting requirement under Federal law, contrary to Title 18, United States Code, Section 1956. * * * It was further part of the conspiracy that defendants * * * JOHNNY DACCARETT, * * * FRIKO CORPORATION and others maintained bank accounts, money market accounts, and certificates of deposit in their own names and in the names of other individuals and corporations, and utilized those accounts to receive large sums of money orders and checks from defendant JULIO MONTES CARDONA and others.
Friko was dismissed without prejudice as a defendant in United States v. Montes Cardona, supra, on October 16, 1990. To date, the criminal indictment remains open as to petitioner. Although aware that he has been under indictment for some time, petitioner has not attempted to surrender himself to the proper authorities to face the charges. On or about May 3, 1991, respondent executed a jeopardy assessment against Friko. On June 28, 1991, respondent *606 issued a notice of deficiency to Friko determining deficiencies in and additions to its Federal corporate income taxes as follows: Additions to Tax
Year
Deficiency
Sec. 6651(a)
Sec. 6654(a)
1985
$ 100,431
$ 25,108 $ 5,909 1986
569,942
142,486
28,082
1987
513,930
128,202
27,767
1988
135,536
33,884
7,827
1989
286,716
70,779
16,873
In particular, respondent determined that Friko failed to maintain adequate records and failed to file Federal corporate income tax returns for the years in issue. Accordingly, respondent computed Friko's income based on total deposits to account No. 14407143, an account that Friko maintained with Merrill, Lynch, Pierce, Fenner & Smith, Inc. (the Merrill Lynch account). On or about July 28, 1992, respondent executed a jeopardy assessment against petitioner. On September 24, 1992, respondent issued a notice of deficiency to petitioner determining deficiencies in and additions to petitioner's Federal income taxes for the same years and in the same amounts listed in the deficiency notice issued to Friko. Petitioner's liability is based on respondent's determination that petitioner is the alter ego or nominee of Friko. *607 Petitioner filed a petition with this Court on October 13, 1992. By Order of Dismissal and Decision entered January 6, 1993, we exercised our discretion in favor of granting respondent's Motion to Dismiss the petition on the ground that, as a fugitive from justice, petitioner is not entitled to a redetermination of his tax liability in this Court. As previously indicated, our Order of Dismissal and Decision was vacated on appeal and remanded to us for further consideration. Petitioner has been involved directly or indirectly in two separate civil forfeiture proceedings arising from the alleged money-laundering scheme described in the indictment in United States v. Montes Cardona, supra. In both cases, petitioner was found to be a fugitive from justice. In United States v. Contents of Account Nos. 3034504504 and 114-07143, Civ. Action No. 90-1262 (D.N.J., filed Apr. 5, 1991), affd. in part and vacated and remanded in part 971 F.2d 974, 986 (3d Cir. 1992), the Government filed a civil forfeiture complaint against two Merrill Lynch accounts titled in Friko's name. (We note that one of the accounts forms the basis for the deficiency notice *608 issued in this case.) In response, Friko filed a notice of claim and a motion to dismiss the civil forfeiture complaint. The District Court, in an unpublished opinion, denied Friko's motion to dismiss and struck Friko's claim. In so holding, the District Court first identified petitioner as a fugitive from justice based on his failure to appear in the earlier related criminal prosecution brought in that court. Citing the lack of any evidence that Friko operates as a legitimate enterprise, the District Court applied the fugitive disentitlement doctrine against Friko on the theory that Friko was simply a shell for petitioner. In the alternative, the District Court held that Friko failed to prove actual ownership and control over the accounts in question, and, thus, failed to establish its standing to file a notice of claim. Friko appealed the matter to the U.S. Court of Appeals for the Third Circuit. The Court of Appeals agreed with the District Court that, based on the evidence presented, Friko had failed to establish its standing to prosecute a claim with respect to the accounts in question. Nonetheless, the matter was remanded to the District Court to allow that court to address *609 Friko's motion for reconsideration seeking to present additional evidence. United States v. Accounts Nos. 3034504504 and 144-07143, 971 F.2d at 986. [2]
In another civil forfeiture proceeding, United States v. All Funds on Deposit, 801 F. Supp. 984 (E.D.N.Y. 1992), affd. sub nom. United States v. Daccarett, 6 F.3d 37 (2d Cir. 1993), claimants Manufacturas J.D. and Organizacion J.D. established to the satisfaction of the District Court that the funds they claimed were not traceable proceeds of illegal drug activity. In an effort to preclude the claimants from gaining access to their funds, the Government argued that the claimants were *610 nothing more than a shell for petitioner, a fugitive from justice, and, thus, their claims should be dismissed under the fugitive disentitlement doctrine. The District Court rejected the Government's argument. Id. at 998. In particular, while the court acknowledged petitioner to be a fugitive from justice, the court nonetheless declined to apply the fugitive disentitlement doctrine against the claimants on alternative grounds. First, the court cited the lack of any credible evidence that petitioner controlled the claimants. Id. at 999. The court also pointed out that petitioner was not flouting its authority. Id.The District Court also declined to apply the fugitive disentitlement doctrine on the ground that the civil forfeiture proceeding pending in that court was independent of the criminal indictment pending against petitioner. Id.[3]
*611 Notwithstanding the District Court's decision, the claimants' access to the funds in question was later blocked when the Internal Revenue Service served a notice of levy on the clerk of the District Court to surrender the funds on the ground that the claimants were nominees of petitioner. United States v. Daccarett, 6 F.3d at 59. The District Court subsequently ordered the clerk to comply with the levy, an act that was affirmed by the Court of Appeals. Id. The Court of Appeals indicated that the claimants would have to file a wrongful levy action in order to obtain review of the matter. Id.
Discussion
The Supreme Court has long held that an appellate court may dismiss the appeal of a defendant who is a fugitive from justice while his appeal is pending. Molinaro v. New Jersey, 396 U.S. 365 (1970); Bonahan v. Nebraska, 125 U.S. 692 (1887); Smith v. United States, 94 U.S. 97 (1876). In Molinaro v. New Jersey, supra at 366, the Supreme Court justified its dismissal of the case as follows: No persuasive *612 reason exists why this Court should proceed to adjudicate the merits of a criminal case after the convicted defendant who has sought review escapes from the restraints placed upon him pursuant to the conviction. While such an escape does not strip the case of its character as an adjudicable case or controversy, we believe it disentitles the defendant to call upon the resources of the Court for determination of his claims. * * *
The rule of law set forth in Molinaro, known as the fugitive disentitlement doctrine, is supported by a number of considerations including concerns regarding the enforceability of an adverse judgment entered in the fugitive's absence, the deterrent effect that dismissal may have, and the promotion of efficient and dignified judicial proceedings. See Ortega-Rodriguez v. United States, 507 U.S. at    , 113 S. Ct. at 1204-1205. While Molinaro concerned the dismissal of an appeal from a criminal conviction, the lower courts have applied the fugitive disentitlement doctrine in varying circumstances. For instance, several courts have applied the doctrine to preclude a fugitive from attempting to preserve his property in a civil forfeiture *613 action while at the same time avoiding the court's criminal processes. See United States v. Eng, 951 F.2d 461 (2d Cir. 1991); United States v. 7707 S.W. 74th Lane, 868 F.2d 1214 (11th Cir. 1989); United States v. $ 129,374 in United States Currency, 769 F.2d 583 (9th Cir. 1985); United States v. 760 S.W. 1st St., 702 F. Supp. 575 (W.D.N.C. 1989). Notably, the U.S. District Court for the District of New Jersey invoked the fugitive disentitlement doctrine in this fashion to preclude Friko from contesting the seizure of certain assets in a civil forfeiture action. See United States v. Accounts Nos. 3034504504 and 144-07143, 971 F.2d at 984. [4] On the other hand, some courts have declined to apply the doctrine with respect to forfeiture proceedings. See United States v. $ 40,877.59 in United States Currency, 32 F.3d 1151 (7th Cir. 1994); United States v. Pole No. 3172, 852 F.2d 636 (1st Cir. 1988); United States v. $ 83,320 in United States Currency, 682 F.2d 573 (6th Cir. 1982). *614 The Federal courts have not limited their use of the fugitive disentitlement doctrine to civil forfeiture proceedings. In Conforte v. Commissioner, 692 F.2d 587 (9th Cir. 1982), affg. in part, revg. in part and remanding in part 74 T.C. 1160 (1980), the court held that the taxpayer was a fugitive from justice following his conviction on "related" Federal employment tax evasion charges. [5] See Ali v. Sims, 788 F.2d 954, 958-959 (3d Cir. 1986) (fugitive denied opportunity to prosecute a civil rights claim); Schuster v. United States, 765 F.2d 1047 (11th Cir. 1985) (fugitive denied *615 review of a termination tax assessment); Doyle v. United States Dept. of Justice, 668 F.2d 1365 (D.C. Cir. 1981) (dismissal of fugitive's suit brought under the Freedom of Information Act); Broadway v. City of Montgomery, 530 F.2d 657 (5th Cir. 1976) (dismissal of fugitive's appeal from a civil suit seeking damages for an alleged illegal wiretap).
This Court first invoked the fugitive disentitlement doctrine in Berkery v. Commissioner, 90 T.C. 259, *616 supplemented by 91 T.C. 179 (1988), affd. without published opinion 872 F.2d 411 (3d Cir. 1989). In Berkery, the taxpayer was indicted (but not arrested) on drug charges relating to his alleged possession of phenyl-2-propanone. The Commissioner later determined deficiencies in the taxpayer's Federal income tax for the years 1980 and 1981 after concluding that the taxpayer had failed to report income derived from his alleged drug dealing. Based on facts stipulated by the parties, we concluded that the taxpayer was a fugitive from justice. Berkery v. Commissioner, supra at 261 n.3. Further, relying on Molinaro v. New Jersey, 396 U.S. 365 (1970), and Conforte v. Commissioner, supra, we exercised our discretion and dismissed the taxpayer's petition for redetermination under the fugitive disentitlement doctrine. Berkery v. Commissioner, supra at 264-265. In light of the direct relationship between the criminal charges that the taxpayer was avoiding and the tax deficiencies in dispute, we found it unnecessary to address *617 the question of whether there must be some nexus between the taxpayer's fugitive status and the proceedings brought in this Court. Id. at 265 n.10. The principle of law set forth in Berkery v. Commissioner, supra, reflects the current view of this Court. See Edelman v. Commissioner, 103 T.C.     (1994); Smith v. Commissioner, T.C. Memo. 1989-325. Indeed, we cited Berkery v. Commissioner, supra, in the instant case in support of our decision to dismiss the petition filed by petitioner. The Supreme Court recently revisited the fugitive disentitlement doctrine in Ortega-Rodriguez v. United States, supra. In Ortega-Rodriguez, the defendant was arrested, tried, and convicted in Federal District Court of various drug-related charges. When the defendant failed to appear for sentencing, he was sentenced in absentia to 19 years and 7 months in prison, and a warrant was issued for his arrest. The defendant was apprehended 11 months later and was sentenced to an additional 21 months of imprisonment for contempt of court and failure to *618 appear. Later, upon motion, the defendant's sentence for the drug convictions was vacated, and he was resentenced to a prison term of 15 years and 8 months. In response to the defendant's timely appeal of his sentence to the Court of Appeals for the Eleventh Circuit, the Government filed a motion to dismiss the appeal, relying on United States v. Holmes, 680 F.2d 1372 (11th Cir. 1982), and the fugitive disentitlement doctrine. The Court of Appeals granted the Government's motion to dismiss. Following a review of the matter, the Supreme Court vacated the dismissal and remanded the case to the Court of Appeals for the Eleventh Circuit for further proceedings. More specifically, the Supreme Court resolved that, absent some connection between a defendant's fugitive status and his appeal, the fugitive disentitlement doctrine generally is not properly invoked by an appellate court where the erstwhile fugitive is apprehended or otherwise surrenders prior to the commencement of the appeal from his criminal conviction. Ortega-Rodriguez v. United States, 507 U.S. at    , 113 S. Ct. at 1208. The Supreme Court reasoned that: the rationales that *619 supported dismissal in cases like Molinaro and Estelle should not be extended as far as the Eleventh Circuit has taken them. Our review of rules adopted by the courts of appeals in their supervisory capacity is limited in scope, but it does demand that such rules represent reasoned exercises of the courts' authority. See Thomas v. Arn, 474 U.S. 140, 146-148, 106 S. Ct. 466, 470-471, 88 L.Ed.2d 435 (1985). Accordingly, the justifications we have advanced for allowing appellate courts to dismiss pending fugitive appeals all assume some connection between a defendant's fugitive status and the appellate process, sufficient to make an appellate sanction a reasonable response. * * * [Fn. ref. omitted.]
Id. at    , 113 S. Ct. at 1205-1206. Focusing on the various rationales underlying the fugitive disentitlement doctrine, including those based on enforceability concerns and on grounds relating to the efficient operation of the appellate process, the Supreme Court observed that such "justifications are necessarily attenuated" given that the defendant had been taken into custody prior to filing his appeal. *620 Id. at    , 113 S. Ct. at 1206. Similarly, the Supreme Court noted that the defendant had in fact flouted the authority of the District Court, not that of the Court of Appeals, by fleeing prior to his sentencing. Id. at    , 113 S. Ct. 1206-1207. In addition, the Supreme Court observed that the District Court had vindicated the public interest in discouraging escape by imposing a separate sentence of 21 months on the defendant for that crime. Id. at    , 113 S. Ct. 1207-1208. Recognizing that there nonetheless might be a narrow set of circumstances justifying dismissal of the appeal as a sanction for the defendant's conduct, the Supreme Court remanded the case to the Court of Appeals for the Eleventh Circuit for further proceedings. Id. at    , 113 S. Ct. 1208-1209. [6]
*621 As previously indicated, our mandate from the Court of Appeals is to resolve whether application of the fugitive disentitlement doctrine under the circumstances presented is consistent with the concerns articulated by the Supreme Court in Ortega-Rodriguez. Before proceeding with our analysis on that issue, however, we feel compelled to address two other points mentioned in the Court of Appeals' opinion. Specifically, the Court of Appeals stated that: Daccarett-Ghia's appeal raises serious questions regarding whether he is a fugitive in view of the alleged facts that he never resided in the United States and took no evasive action to avoid prosecution; and whether the doctrine applies when the fugitive is in effect defending against governmental action rather than using the courts affirmatively in an attempt 'to reap the benefit of the judicial process without subjecting himself to an adverse determination,' United States v. Pole No. 3172, Hopkinton, 852 F.2d 636, 643 (1st Cir. 1988). * * *
Friko Corp. v. Commissioner, 26 F.3d at 1142-1143. The record in this case shows that petitioner is aware that he *622 is under indictment. At the same time, petitioner has made no attempt to submit to arrest. Moreover, petitioner was found to be a fugitive in two separate civil forfeiture proceedings. See United States v. All Funds on Deposit, 801 F. Supp. at 998; United States v. Contents of Account Nos. 3034504504 and 114-07143, Civ. Action No. 90-1262, slip op. at 5 (filed Apr. 5, 1991). Recognizing the nature of both the crimes that petitioner is alleged to have committed and contemporary banking practices and technology, it may very well be that petitioner engaged in the alleged criminal conduct from a location outside of the United States. Thus, we see no need to consider whether petitioner fled the country in some literal sense. See Streep v. United States, 160 U.S. 128, 134 (1895); Schuster v. United States, 765 F.2d 1047, 1050 (11th Cir. 1985); Jhirad v. Ferrandina, 536 F.2d 478, 483-484 (2d Cir. 1976). Consistent with these precedents, we reaffirm our prior holding that petitioner is a fugitive from justice. We are not prepared to abandon the fugitive disentitlement *623 doctrine on the theory that petitioner is really defending against governmental action. We recognize that the Supreme Court has declined to apply the fugitive disentitlement doctrine where it is the Government, as opposed to a fugitive/defendant, who is seeking review of a lower court decision. See United States v. Sharpe, 470 U.S. 675, 681-682 n.2 (1985). However, unlike Sharpe, the instant case involves a fugitive who has never submitted to arrest. See United States v. Eng, 951 F.2d 461, 466 (2d Cir. 1991). Based on our understanding of the import and scope of Ortega-Rodriguez v. United States, 507 U.S.    , 113 S. Ct. 1199 (1993), and considering the specific circumstances presented in the instant case, we will exercise our discretion in favor of dismissing the petition filed in this case. As an initial matter, we note that Ortega-Rodriguez involved the question of the propriety of applying the fugitive disentitlement doctrine against a defendant who was no longer a fugitive. In contrast, petitioner in the instant case is attempting to prosecute his petition for redetermination *624 in this Court while he remains a fugitive from justice. Although Ortega-Rodriguez includes a broad discussion of the fugitive disentitlement doctrine and the rationales underlying the rule, we do not glean from that opinion an intention to overrule the long line of cases applying the fugitive disentitlement doctrine in civil proceedings (such as the instant case) where the defendant remains a fugitive. Admittedly, the various justifications for the fugitive disentitlement doctrine that are enumerated in Ortega-Rodriguez do not uniformly support dismissal in the instant case. In particular, this Court generally does not have authority to enforce its judgments -- the matter of tax collection is largely left in the hands of the Secretary of the Treasury, or his delegate, who may authorize the commencement of suits for that purpose in the Federal District Courts. See secs. 6301, 7401. In any event, enforceability does not appear to be an overriding concern given that respondent has seized an account containing sufficient funds to satisfy a substantial part of the deficiencies in dispute. More importantly, however, we observe that petitioner's alleged money-laundering activities *625 are connected with the tax deficiencies determined by respondent. Specifically, the deficiencies that respondent determined in this case are based on deposits to an account that petitioner allegedly used to "launder" the proceeds of illegal drug sales. Respondent determined that those deposits reflect unreported income. In light of the connection between the two matters, it is this Court's position that a rational basis exists for applying the disentitlement theory articulated in Molinaro v. New Jersey, 396 U.S. 365 (1970), to preclude petitioner from prosecuting his petition for redetermination in this Court. In this regard, we will follow the reasoning of the line of cases including United States v. Eng, supra.Sound policy concerns dictate that petitioner should not be permitted to selectively choose the benefits and burdens of the U.S. legal system that will apply to him. See Edelman v. Commissioner, 103 T.C.     (1994); Berkery v. Commissioner, 90 T.C. at 265. Consequently, we will grant respondent's motion to dismiss and enter an order of dismissal and decision sustaining *626 the deficiencies that respondent determined in this case. We will, however, vacate that decision if, within 30 days after service of the order of dismissal and decision, petitioner submits himself to the jurisdiction of the Federal courts for purposes of answering the charges for which he has been indicted. To reflect the foregoing, An appropriate order of dismissal and decision will be entered. Footnotes
1. All section references are to the Internal Revenue Code unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. To date, Friko's motion for reconsideration has not been resolved. It appears that the matter has been delayed as a result of the District Court's decision denying an application filed by Isidoro Rodriguez (Friko's counsel) to appear pro hac vice and to waive the local counsel requirement.↩
3. In concluding that the forfeiture proceeding was not related to the criminal indictment pending against petitioner, the District Court characterized the criminal indictment as involving tax violations unrelated to the money laundering activities underlying the civil forfeiture proceeding. United States v. All Funds on Deposit, 801 F. Supp. 984, 999 (E.D.N.Y. 1992), affd. sub nom. United States v. Daccarett, 6 F.3d 37↩ (2d Cir. 1993).
4. The Court of Appeals for the Third Circuit, by way of dicta, indicated that it agreed with the District Court's application of the fugitive disentitlement doctrine based on the facts presented. United States v. Accounts Nos. 3034504504 and 144-07143, 971 F.2d 974, 986↩ n.9 (3d Cir. 1992).
5. Chief Justice Rehnquist later denied the taxpayer's application for a stay of the Court of Appeals' judgment pending the filing and disposition of a petition for certiorari. While recognizing the expanded use of the fugitive disentitlement doctrine in the lower courts, the Chief Justice concluded that the Supreme Court's denial of petitions for certiorari in such cases in the past made it unlikely that the taxpayer's petition would be granted. Conforte v. Commissioner, 459 U.S. 1309, 1312↩ (1983).
6. On remand, the Court of Appeals for the Eleventh Circuit decided to allow the defendant to prosecute his appeal. United States v. Ortega-Rodriguez, 13 F.3d 1474↩ (11th Cir. 1994).